**Victor E. FARON and Marjorie Faron as trustees for their respective trusts, Plaintiffs–Appellants,**

v.

**WADDELL & REED, INC., Defendants–Respondents.**

No. 70027.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 8, 1996.

---

Craig A. Sullivan, St. Louis, for Plaintiffs–Appellants.

Martin J. Toft and Mark A. Kinzie, St. Louis, and W. Perry Brandt, Kansas City, for Defendants–Respondents.

KAROHL, Judge.

Plaintiffs, Victor and Marjorie Faron, as trustees for their own inter vivos trusts, appeal summary judgment in favor of defendant, Waddell & Reed, Inc., securities broker. The court found that Victor Faron (Victor) failed to expressly request information about tax consequences when he asked advice on "costs" of a financing transaction. The Farons argue this finding does not provide a complete defense to Waddell & Reed and is unsupported by available summary judgment facts. They also contend Waddell & Reed breached a duty to "advise the Farons of the possible risk of adverse tax consequences arising out of the proposed transaction, or at least to counsel the Farons to seek outside tax expertise." We reverse and remand.

In 1993, the Farons signed a contract to purchase a new house before they had closed on the sale of their old house. They needed $250,000 to pay for the new house until they received the money from the sale of their old house.

As one possible solution, Victor went to the Waddell & Reed office to determine whether he could get the $250,000 from them. At Waddell & Reed he met with Charles Pericich, a registered representative. Pericich and Victor had no previous dealings with each other. Victor asked Pericich whether he could obtain the money and whether it

would "cost any money." After he consulted with Pericich he felt assured he could get the money and the transaction would result in no cost to him. Victor did not specifically consider tax ramifications nor did he directly ask about tax consequences. He assumed Waddell & Reed was lending the money to him to use for up to 21 days, at no cost. He did not inquire further. Thus, he obtained the $250,000 from Waddell & Reed, returning the same amount within the required 21 days. The Faron's accountant discovered the tax liability in the amount of approximately $32,000 while preparing their income tax return. He brought it to the attention of the Farons, who brought this suit against Waddell & Reed.

The trial court granted Waddell & Reed's motion for summary judgment. It found: "Victor Faron did not believe his request of whether his mutual fund shares sale would 'cost any money' . . . was a request for any tax information. . . . The evidence in the record does not create a duty of defendant to provide tax information when none was requested."

■ The sole point on appeal consists of two parts: (1) the court erred in granting summary judgment to Waddell & Reed because the court's finding was not supported by the evidence, and a genuine fact dispute was before the court; and, (2) the court misapplied the law by finding Victor's failure to request tax information provided an absolute legal defense to Waddell & Reed.

We review under the standard set forth in *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993).

[A] "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed . . . each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

The Farons contends summary judgment was improper because a material fact was genuinely disputed. By deposition Victor testified he needed $250,000 to close on his new house a few days before he closed on the sale of his old house. He went to Waddell & Reed to ask whether he could take the money out of United Funds, assets of his and his wife's trusts, to cover the period between closings. He testified as follows:

Q. Did you have any thought or concern about the tax ramifications of doing it at that time?

A. No.

Q. Did you have any thoughts or concerns about whether you should take your money out, buy the house, close on the new house, and put your money back in?

A. Yes.

Q. What was your concern?

A. I talked to Chuck over there and I asked him about doing this, and he said that can be done. *I asked is this going to cost any money,* and he said no, as long as you get it back within 21 days.

\* \* \* \* \* \*

Q. . . . Anything else you asked of him or said to him in the course of that meeting other than can I take my money out?

A. Well, I—I asked him, I know, is this *going to cost any money.*

Q. Okay.

A. And *he said no,* just get it back in 21 days.

Q. Okay. And what did you understand that 21 days to mean?

A. I thought he was borrowing me the money or—I really didn't care. He was giving me the money, and I was going to return it.

Q. You understood, did you not, that what he was telling you about was the Waddell & Reed or United Funds reinvestment policy; is that correct? Is that cor-

rect? That's what—did you understand him to be telling you what the Waddell & Reed or United Funds policy was about taking money out and putting it back in? A. *No.* He was—what *I presumed* he was telling me that there was no—*no loss whatsoever* in this transaction. *How he done it or why he done it, I didn't care. I didn't question him on it.* (Our emphasis).

Thus, summary judgment facts in evidentiary form before the court would support a finding Victor asked Pericich about any cost associated with the transaction and Pericich led him to believe "no loss whatsoever" would result. A jury could have found the tax obligation is a cost which was included in the request for information from an expert money manager, one who instructed its employees to consider "appropriate tax strategies" for their clients. Whether tax consequences were included in Victor's request for information remains a disputed question of fact. Summary judgment is not available when a genuine dispute of a material fact exists.

In the second part of the Faron's point they contend the court misapplied the law by finding Waddell & Reed had no duty to provide tax information because none was requested, therefore, providing Waddell & Reed with a complete defense.

 The Missouri Supreme Court addressed a broker's fiduciary duty in *State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126 (Mo. banc 1995).

Silence or nondisclosure equals misrepresentation only when there is a duty to speak. This duty arises either from a trustful, confidential relationship or where one party has superior information not reasonably available to the other. In Missouri, stockbrokers owe customers a fiduciary duty. This fiduciary duty includes at least these obligations: to manage the account as dictated by the customer's needs and objectives, to inform of risks in particular investments, to refrain from self-dealing, to follow order instructions, to disclose any self-interest, to stay abreast of market changes, and to explain strategies. Implicit in these obligations is a duty to disclose

to the customer material facts. *Id.* at 129–130. (Citations omitted).

In *PaineWebber,* the court found the broker had no duty to "discuss orally with a competent party conspicuous written provisions like the arbitration and loan clauses...." *Id.* at 130.

Here, Waddell & Reed was privy to information and had expertise not yet proven to be equally or reasonably available to Victor. In particular, Pericich was aware of details of the transaction which consisted of a redemption of mutual funds, while Victor understood the transaction to amount to a short-term loan. Waddell & Reed had a duty to manage the account according to the Faron's expressed needs and objectives, to bridge finance by use of trust assets with "no loss whatsoever," if possible, or inform the Farons of the costs. Victor communicated his concern about possible costs associated with the proposed transaction to Pericich. Victor was not told how the transaction would occur but was told it would not cost any money. What Victor and Pericich meant by "costs" remains uncertain. Their meanings may not be the same. This implicates an unresolved question of fact. The liability of Waddell and Reed on the allegations Pericich should have interpreted the inquiry to include tax consequences as one possible "cost" depends on this disputed fact.

Waddell & Reed's Career Development Program Investments Manual instructs on the issue of taxation advice as follows:

**Income Tax Issues**

**W & R's** role concerning taxation issues for shareholder is to:

1. Explain conceptually the nature of taxation resulting from any investment made.

 For example, the registered representative *will explain to the client* whether the dividends and/or capital gains received from an investment *will be currently taxable, tax deferred or generally tax free.*

2. Provide the annual tax information on year end account statements that will allow the client or their tax advisor to calculate actual tax liabilities.

The role of the representative is not to provide exact tax calculations, determine tax liability, or provide specific tax advice. (Our emphasis).

Waddell & Reed's instruction in the manual would support a finding it has some duty, even if limited, to customers on income tax consequences even if the customer does not expressly request general tax advice. Here, capital gains from the redemption were currently taxable. Such an explanation would not conflict with Waddell & Reed's policy not to provide exact tax calculations or tax liability.

Waddell & Reed rely on *McCaw v. O'Malley,* 298 Mo. 401, 249 S.W. 41 (1923) and *Misskelly v. Rogers,* 721 S.W.2d 170 (Mo. App.1986) to support its argument it had no duty to explain that capital gains from the transaction would be currently taxable. However, neither case is meaningful. Both involved real estate transactions. Neither involved Waddell and Reed's failure to explain the nature of the planned transaction or recognition of a duty regarding tax liability in a security transaction. They were not summary judgment cases.

Reversed and remanded.

RHODES RUSSELL, P.J., and SIMON, J., concur.