EMERSON ELECTRIC CO., Appellant,

v.

MARSH & McLENNAN COMPANIES, et al., Respondents.

No. SC 92026.

Supreme Court of Missouri, En Banc.

March 6, 2012.

8 ■■ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9

Mark G. Arnold, Husch Blackwell LLP, Dorothy White–Coleman, Susie McFarlind, White Coleman & Associates LLC, St. Louis, John C. Cabaniss, Cabaniss Law, Randall D. Crocker, Thomas Armstrong, von Briesen & Roper SC, Milwaukee, for Emerson.

Christopher J. St. Jeanos, Willkie Farr & Gallagher LLP, New York, Kevin F. Hormuth, David P. Niemeier, Greensfelder Hemker & Gale PC, St. Louis, for Marsh.

LAURA DENVIR STITH, Judge.

Emerson Electric Company appeals the circuit court's grant of judgment on the pleadings to Marsh USA Inc., Marsh & McLennan Companies Inc., Marsh Inc. and Joseph E. Lampen (collectively "Marsh") on Emerson's claims that Marsh violated a fiduciary duty of loyalty to Emerson by not disclosing that Marsh received contingent commissions from insurers for directing Emerson's business to them and that Marsh kept all interest earned on the premiums Emerson sent it between the time Marsh received them and the time they were forwarded to the relevant insurers. In addition, Emerson argues that Marsh breached a duty to find it the least costly policy possible, in part due to the commissions and interest income it received.

As discussed below, it is settled law that when a broker is acting as the agent of an insured, it has a fiduciary duty to perform its duties with reasonable care, skill and diligence. This Court agrees that this necessarily includes a duty of loyalty to the insured during the scope and course of that agency. But the scope of the agency, and hence of the duty, of a broker to an insured is limited. While a broker has a duty to act with reasonable care, skill and diligence in procuring insurance, Missouri long has held that a broker has no duty to advise the insured about what insurance he needs or what insurance to buy unless it specifically undertakes to do so. This Court, therefore, rejects Emerson's claim that brokers have an additional duty to find insureds the lowest possible cost insurance available to meet their needs.

Brokers are independent agents, not employees, who are paid by commission. Their receipt of such commissions is not a breach of the duty of loyalty or other fiduciary duties owed to insureds. Whether Emerson is correct that a broker's additional receipt of undisclosed contingent commissions for steering business to a particular insurer breaches a common law duty to the insured is not reached by this Court, for Missouri statutes specifically authorize a broker to receive commissions from the insurer, without distinguishing between types of commissions. § 375.116, RSMo 2000.[1] Emerson cites no authority requiring disclosure by a broker of statutorily authorized payments or other aspects of its financial arrangements with an insurer.

Similarly, section 375.051 [2] anticipates that a broker will deposit premiums in an account pending their payment to the insurer or refund to the insured. It makes the broker a fiduciary as to the funds deposited but does not require the broker to segregate the premiums from its other funds, nor does it set out any obligations as to interest on the premiums. Indeed, in the absence of a contrary agreement, a broker's duty to the insured normally ends once it has procured insurance, and it holds any premiums for the benefit of the insurer, not the insured. Emerson cites no authority holding that a broker has a duty to pay interest on premiums to the insured or to disclose to the insured that it receives such interest.

Nonetheless, this Court finds that the trial court erred by dismissing the petition because it cannot be said as a matter of law that Emerson cannot recover on one or more of its claims. While Emerson nowhere alleges fraud or misrepresentation, if its petition is read very broadly, it does allege that receipt of the contingent commissions caused Marsh to fail to act with reasonable care, skill and diligence in procuring insurance. This states a claim for relief. Similarly, the scope of a broker's duty may vary depending on its agreement with the insured and the relationship between the parties. To the extent that the petition alleges that Marsh undertook duties in addition to those imposed by law, its failure to fulfill them may be actionable. Here, because judgment was granted on the pleadings, the record is insufficient to determine whether, based on agreements governing the scope of their more than 20–year relationship as broker and agent, such a duty arose. Accordingly, the judgment of the trial court is reversed, and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Emerson's pleadings, which are taken as true for the purposes of this appeal, assert that Marsh is the largest insurance broker in the world, providing advice concerning and facilitating the purchase of appropriate insurance for the diverse risks faced by its clients around the world. Emerson is a multinational industrial company that designs, manufactures and sells a variety of products worldwide. Emerson has utilized Marsh's insurance brokering services to acquire excess liability, aircraft, international and other specialized insurance since 1987.

---

1. The Court uses the terminology set out in the 2000 version of section 375.116 that was in effect during much of the period in dispute but notes that, in 2001, the statute was amended to replace the phrase "insurance carrier or agent thereof or broker" with the phrase "insurance company or insurance producer." § 375.116, RSMo Supp.2010.

2. Both parties rely on the current version of the statute, § 375.051 RSMo Supp.2010.

The record does not reveal whether the parties operated under a written or oral agreement or a combination of both. It does reveal that, in the course of their relationship as broker and insured, Emerson paid Marsh to place particular types of insurance with insurers to meet a variety of Emerson's insurance needs. According to Emerson, Marsh steered its business to a few insurers that agreed to pay Marsh extra commissions, the amount of which was contingent on the amount of business Marsh had sent the insurers.

In addition to seeking advice from Marsh, Emerson would pay its insurance premiums to Marsh. Marsh then would remit those premiums to the insurer who had agreed to issue a policy to Emerson and would provide Emerson with the policy. During some or all of the period of time between when Marsh received the premiums and it forwarded them to the relevant insurer, it would deposit the premiums in an interest-bearing account. The record does not reveal why Emerson paid the premiums at the times it did, whether they were held for days, weeks or months, or the amount of interest Marsh received. Nor does it reveal whether Marsh directly told Emerson that it earns interest on its premiums, although Marsh's public filings disclosed that it earns such interest on its premium accounts.

In 2005, Emerson sued Marsh in the St. Louis circuit court[3] asserting that Marsh's desire to earn contingent commissions led it to place insurance with companies that did not offer the best rates. Emerson alleged that this practice, as well as Marsh's undisclosed deposit of premiums in an interest-bearing account before forwarding them to insurers, amounted to self-dealing, which violated a fiduciary duty of loyalty it owed Emerson when acting in the scope and course of its duties as Emerson's broker.

Emerson also alleged that accepting contingent commissions violated Marsh's duty to exercise reasonable skill, care and diligence to obtain insurance that met its needs at the lowest possible price, as these practices must have increased the cost of its premiums. It further alleges that even if insurance brokers do not have a general duty to obtain the lowest possible cost insurance, Marsh agreed to do so but failed in that duty.

▇ In June 2010, Marsh filed a motion for judgment on the pleadings claiming that it did not breach any duties it owed to Emerson because: (1) section 375.116 allows insurance brokers to accept commissions—contingent or otherwise—from insurers without disclosing such commissions to insureds and, as a result, Marsh did not have a duty to disclose such commissions to Emerson; (2) Missouri law does not require an insurance broker such as Marsh to find the lowest possible price for insurance but rather imposes a duty to use reasonable skill, care and diligence in pro-

3. The case was removed to the United States District Court for the Eastern District of Missouri and then transferred by the United States Judicial Panel on Multidistrict Litigation to the United States District Court for the District of New Jersey and consolidated for pretrial proceedings with other similar suits that alleged that Marsh and a number of other brokers entered into an anti-competitive agreement developed by Marsh in which the brokers agreed to steer business to particular insurers, resulting in higher brokerage fees and costs for insureds. *In re Insurance Brokerage Antitrust Litigation,* Civil No. 04–5184 (D.N.J.2005). Marsh's portion of the case was transferred back to the United States District Court for the Eastern District of Missouri after settlement of the federal claims against it. *Emerson Elec. Co. v. Marsh & McLennan Co., Inc.,* No. 4:05–cv–00455–RWS (E.D.Mo.2005). Emerson successfully sought remand back to state court in January 2010 to pursue its state law claims.

curing insurance for Emerson, and Marsh fulfilled that duty; and (3) once an insured pays its premium to a broker, the broker holds the premium on behalf of the insurer, not the insured, and, therefore, Marsh did not owe Emerson a duty to disclose interest it accrued from temporarily investing Emerson's premiums prior to transferring them to insurers.[4]

In October 2010, the trial court granted Marsh's motion for judgment on the pleadings. Emerson appealed to the court of appeals, which, after opinion, transferred the case to this Court pursuant to Rule 83.02.

## II. STANDARD OF REVIEW

■ In reviewing the grant of a motion for judgment on the pleadings, this Court must decide "whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007), *quoting RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 424 (Mo.App.2003). "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Id.* A grant of judgment on the pleadings will be affirmed only "if the facts pleaded by the petitioner, together with the benefit of all reasonable inferences drawn therefrom, show that petitioner could not prevail under any legal theory." *Messner v. Am. Union Ins. Co.*, 119 S.W.3d 642, 644 (Mo.App.2003).

## III. DUTIES OF INSURANCE BROKERS AND AGENTS

### A. Fiduciary Duty is Part of Broker–Insured Relationship

■ It is helpful to understand the difference between an insurance agent and an insurance broker such as Marsh. An insurance agent works for and acts as an agent for a particular insurer or insurers. "By definition an insurance agent is ordinarily 'an agent of the insurer' and not an agent of the insured." *Graue v. Missouri Prop. Ins. Placement Facility*, 847 S.W.2d 779, 783 (Mo. banc 1993), quoting § 375.012(4), RSMo 1986. A general agent for the insurer usually will be able to enter into contracts binding the insurer and accept premiums. *Id.* at 784.

■ While an agent represents the insurer, "an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured." *Gilbert v. Malan*, 231 Mo.App. 469, 100 S.W.2d 606, 612 (1937). "When an insurance broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence." *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394–95 (Mo.App.1998); *accord, Hecker v. Missouri Prop. Ins. Placement Facility*, 891 S.W.2d 813, 816 (Mo. banc 1995); *Restatement (Third) of Agency* § 8.08 (2006) ("Subject to any agreement with the principal, an agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents in similar circumstances.").

■ As is the case with other agents, this means a broker "is a fiduciary

---

4. Marsh argues that Emerson's claims only relate to breach of contract and do not sound in tort. Marsh is mistaken, as "the negligent failure to observe and perform any portion of [a fiduciary] duty gives rise to an action in tort as well as an action for breach of contract." *Autry Morlan Chevrolet Cadillac, Inc.,*

*v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo.App.2010) (claim not barred by economic loss doctrine when client sued in tort and alleged a breach of fiduciary duty that arose from the special relationship of parties as broker-insured).

with respect to matters within the scope of his agency." *Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993), *quoting Restatement (Second) of Agency*, § 13.[5] The scope of the agency of either an agent or a broker normally is limited to procuring the insurance requested by the insured. *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 739 (Mo.App.2009); *Kap–Pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.*, 402 S.W.2d 49, 53 (Mo.App.1966). If a broker is asked to procure particular insurance but fails to do so or fails to inform the insured that the delivered policy is not the one requested so that the insured can make a knowledgeable decision whether to accept the policy or pursue other insurance, the broker has breached its fiduciary duty to exercise reasonable care, skill and diligence in procuring insurance.[6]

But neither agents nor brokers have a duty to advise the insured on its insurance needs or on the availability of particular coverage, unless they specifically agree to do so. *See, e.g., Jones v. Kennedy*, 108 S.W.3d 203, 208 (Mo.App. 2003) (reaffirming that an agent has "no duty ... to inform [the insured] of the availability and advisability" of obtaining particular coverage); *Manzella v. Gilbert–Magill Co.*, 965 S.W.2d 221, 226–27 (Mo. App.1998) (holding insurance agent has no duty to advise insured of amount of insurance necessary to cover all potential losses); *Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 85–87 (Mo.App.1994) (finding insurance agent has no duty to inform insured of existence of optional underinsured motorist coverage).

### B. Limited Duty of Loyalty

The parties disagree as to whether a duty to use reasonable skill to procure requested insurance is the extent of the broker's duty. Emerson asserts that the broker also owes a duty of loyalty as part of its fiduciary duty while acting as the insured's agent. This follows, it argues, from the very nature of being an agent because it is a basic principle of the law of agency that an agent "has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." *Restatement (Third) of Agency* § 8.01 (2006); *accord, Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (agent owes principal duty of loyalty); *Cascade Energy and Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir.1990) ("the fiduciary duty of loyalty and duty of care [are] inherent in any principal-agent relationship").

In *Scanwell v. Chan*, 162 S.W.3d 477 (Mo. banc 2005), this Court cited the *Restatement (Second) of Agency* §§ 387, 393 (1958), in holding that under basic agency principles "every employee owes his or her employer a duty of loyalty." *Id.* at 479. *Scanwell* said it was unclear whether that duty arose from a general fiduciary duty or whether it arose independently, but whichever was the case, the employee in that case would breach her duty of loyalty

---

5. "Once an agency relationship has been established, a fiduciary relationship arises as a matter of law." *A.G. Edwards & Sons, Inc.*, 978 S.W.2d at 395.

6. *Zeff Dist. Co. v. Aetna Cas. & Surety Co.*, 389 S.W.2d 789, 795–96 (Mo.1965), *quoting Am. Jur. 562 Insurance* § 164 (1965) ("An agent or broker who undertakes to procure insurance in accordance with instructions impliedly undertakes to give notice to the [client] in the event of his failure to procure such insurance."); *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 738–39 (Mo.App.2009) (holding that an agent breaches its duty to use reasonable care and diligence in procuring insurance when it fails to provide an insurance policy that covers the contents of the insured's business as the insured had requested).

if she acted contrary to her principal's interest by soliciting clients and competing while still working for the employer. *Id.* at 479–81.

■ Missouri courts have found that travel agents, *Markland v. Travel Travel Southfield Inc.,* 810 S.W.2d 81, 84 (Mo. App.1991), real estate brokers, *Adams v. Kerr,* 655 S.W.2d 49, 53 (Mo.App.1983), and stockbrokers, *State ex rel. Paine-Webber, Inc. v. Voorhees,* 891 S.W.2d 126, 129–30 (Mo. banc 1995),[7] owe their clients a duty of loyalty. *Am. Mortg. Inv. Co. v. Hardin–Stockton Corp.,* 671 S.W.2d 283 (Mo.App.1984), equated the duties of a real estate broker with those of an insurance broker in holding that the insured's failure to discover that the broker had failed to comply with its promised undertaking did not preclude recovery, stating it saw "no reason to draw any distinction between the agency relationship of an insurance broker-insured and a real estate broker-customer." *Id.* at 289. So too, here, this Court finds that the principles that led this Court to find a duty of loyalty of employees, real estate brokers, travel agents and stockbrokers to their principals apply equally to insurance brokers because a duty of loyalty running from the agent to the principal is inherent in the nature of the principal-agent relationship. *See Couch on Insurance,* § 46:27 (3d. ed.2005) (stating "[t]he agent of the insured owes to the insured the duty to act loyally").

Indeed, although *Zeff Dist. Co. v. Aetna Cas. & Surety Co.,* 389 S.W.2d 789 (Mo. 1965), does not use the term "duty of loyalty," this Court did state that an insurance broker "is under a *duty to exercise good faith* and reasonable diligence to pro-

cure the insurance on the best terms he can obtain." *Id.* at 795–96, *quoting 44 C.J.S. Insurance* § 172 (emphasis added). This is but another way of recognizing that a basic duty of loyalty runs between broker and insured.

*C. No Duty to Obtain Lowest Cost Insurance*

Although Marsh owed Emerson a duty of loyalty, this Court agrees with Marsh that Emerson tries to take this concept too far when it argues that it includes a duty to obtain the lowest cost insurance that meets the insured's needs, even in the absence of a specific agreement to do so. This is but a way of reasserting the argument rejected in *Farmers* and other cases that brokers have a duty to inform the insured how much insurance it needs and to search out the best insurance for it. 871 S.W.2d at 85–86; *see also Manzella,* 965 S.W.2d at 226–27.

*Farmers* explained that it rejected such an argument because to impose a duty to give advice or recommend insurance would in effect make agents and brokers into financial counselors or guardians of insureds and require them to have unreasonable knowledge of their insured's needs and of the marketplace. 871 S.W.2d at 85–86.

*Zeff* is the only case Emerson cites to support its argument that a broker must find the cheapest possible policy to meet its duty to use reasonable care in procuring insurance. 389 S.W.2d at 795. Emerson reads *Zeff* too broadly on this issue. The duty of a broker to procure insurance for the insured has remained the same both before and after *Zeff.* In *Zeff,* a broker failed to procure new insurance for an

**7.** Although *State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126 (Mo. banc 1995) did not use the phrase "duty of loyalty," it held that stockbrokers owe their clients a fiduciary duty, which included a "duty to

refrain from self-dealing [and] ... to disclose any self-interest," both integral parts of the duty of loyalty. *Id.* at 129–130; *accord, Faron v. Waddell & Reed, Inc.,* 930 S.W.2d 508, 511 (Mo.App.1996).

insured after his old insurance was cancelled in circumstances in which the broker might have been expected to find such insurance. *Id.* at 791–94. *Zeff* stated:

> [A] broker or agent who, with a view to compensation for his services, undertakes to procure insurance for another, and, unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damage resulting therefrom. An agent or broker who undertakes to procure insurance in accordance with instructions impliedly undertakes to give notice to the owner in the event of his failure to procure such insurance.

*Id.* at 795, *quoting 29 Am.Jur. Insurance* §§ 163–64 (internal citations omitted). *Zeff* then held that, due to the parties' long-standing relationship and course of dealing, the broker had a duty to find additional insurance if it was available rather than leaving the insured without coverage, as occurred in that case, stating:

> An insurance broker, particularly one who acts as general agent for insured and who undertakes to keep the property insured from year to year, *is under a duty to exercise good faith and reasonable diligence to procure the insurance on the best terms he can obtain; and in this connection proper diligence requires him to canvass the market and have adequate knowledge as to the different companies and terms available.* ... Our conclusion is that plaintiff's evidence was sufficient to show *failure of [the broker] to exercise reasonable skill, care and diligence* in replacing the Aetna insurance.

*Id., quoting 44 C.J.S. Insurance* § 172 at 861 (emphasis added) (internal citations omitted). None of the cases or authorities cited in *Zeff* support the proposition that a broker has the duty to obtain the cheapest possible insurance.[8] *Zeff,* like other cases, holds that a broker's duty is to exercise reasonable care, skill and diligence in procuring insurance and further requires that the broker exercise good faith. *Id.* It did not impose a duty to obtain insurance at the lowest possible cost.

■ For these reasons, this Court adheres to its long-standing precedent holding that a broker's duty is to use reasonable care, skill and diligence in procuring insurance. Failure to obtain the lowest possible cost insurance does not in itself violate that duty or a duty of loyalty to the insured in the absence of an agreement imposing such a duty.

### D. Interest on Premiums

■ This Court also rejects Emerson's argument that Marsh's deposit of the premiums sent to it by Emerson into an interest-bearing account pending the time it forwards them to insurers is a breach of Marsh's duty of loyalty.

It is true, as Emerson notes, that there is a broad agency principle that an agent who makes a profit with respect to a matter conducted on behalf of the principal must turn over the profit to the principal. *Restatement (Second) of Agency,* § 388 (1958). But the extent of "an agent's fiduciary duties to the principal vary depending on the parties' agreement and the scope of the parties' relationship." *Restatement (Third) of Agency* § 8.01 cmt. c (2006).

For the reasons just discussed, the agency relationship of the insured and an

---

8. *See* 44 C.J.S. Insurance § 172 at 861; *see also* annotation, 29 A.L.R.2d 171; *Cunningham v. Holzmark,* 225 Mo.App. 762, 37 S.W.2d 956 (1931); *Harris v. A.P. Nichols Inv. Co.,* 25 S.W.2d 484 (Mo.App.1930); *Kaw Brick Co. v. Hogsett,* 73 Mo.App. 432 (Mo.App. 1898); *Couch on Insurance 2d,* § 25:46 (2d ed.1959); *John Alan Appleman & Jean Appleman, Insurance Law and Practice,* § 8841 (1952).

insurance broker is limited in scope, and the duty of loyalty necessarily extends only to matters undertaken by the broker within the scope of the agency.

This limitation is particularly important because a broker is not always an agent of the insured, and indeed its commissions customarily are paid by the insurer. *Graue* reaffirmed that "a broker may be an agent of the insurer or of the insured, depending on the facts of a particular case." 847 S.W.2d at 783. *Gilbert* similarly recognized that even in dealing with the same client, the broker may be the agent of the insured for some purposes but the agent of the insurer for other purposes in the course of the same transaction, without violating a fiduciary duty to either, because a broker:

> [M]ay enlarge his relationship with the company for which he procures business so as to become the agent of such company in one or more or all the particular matters involved.... *He is not necessarily the agent of either of the parties throughout.* He may be the agent of one of them in the transaction of some of the particular matters involved and of the other in the remainder of the matters involved.

100 S.W.2d at 612 (emphasis added).

Of particular importance here, *Gilbert* held that this means a broker "may be the agent of the insured in taking and placing the application and of the [insurer] in the issuance and delivery of the policy *and the collection of the premiums thereon.*" *Id.* (emphasis added); *see also Jeffery E. Thomas & Francis J. Mootz, III, New Appleman on Insurance Law Library Edition 2–23 (2011)* (stating "[b]rokers are typically insurers' agents with respect to issuing policies, issuing certificates of insurance, collecting premiums and the like"). Other cases have held that, as a result, a broker's role as agent of the insured normally ends upon procurement of the insurance. *See, e.g., Hecker,* 891 S.W.2d at 816 (holding the agency relationship "ceases on execution and delivery of the policy to the insured"); *Morrow v. Loeffler,* 297 S.W.2d 549, 552–53 (Mo.1956). In the absence of a continued duty to the insured, the earning of interest could not be a breach.

Emerson has not cited any case holding under either Restatement of Agency principles or the common law that interest a broker may earn on premiums before it remits them to insurers or insureds belongs to anyone other than the broker, much less that a broker has a duty to disclose individually to its insureds the unsurprising fact that it earns interest on money it deposits in its accounts, a matter that is disclosed in its public financial statements.

Missouri's legislature specifically has recognized the limited and dual nature of a broker's role. Section 375.051 states that if the broker is collecting premiums for the insured, then it holds "any money so collected" for the insured in a trust or fiduciary capacity, and if it collects the premiums for the insurer, then it holds "any money so collected" in a trust or fiduciary capacity for the insurer:

> 1. Any insurance producer who shall be appointed or who shall act on behalf of any *insurance company* within this state, or who shall, on behalf of any insurance company, solicit applications, deliver policies or renewal receipts and *collect premiums thereon,* or who shall receive or collect moneys from any source or on any account whatsoever, on behalf of any insurance company doing business in this state, shall be held *responsible in a trust or fiduciary capacity to the company for any money so collected or received by him or her for the insurance company.*

2. Any insurance producer *who shall act on behalf of any applicant for insurance or insured* within this state, or who shall, on behalf of any applicant for insurance or insured, seek to place insurance coverage, deliver policies or renewal receipts and *collect premiums thereon,* or who shall receive or collect moneys from any source or on any account whatsoever, *shall be held responsible in a trust or fiduciary capacity to the applicant* for insurance or *insured for any money so collected or received by him or her.*

*§ 375.051* (emphasis added).

Sections 375.051.1 and 2 do not state that the broker acts as a fiduciary as to any interest earned on premiums. They state only that the broker holds *the money collected* as a fiduciary for either the insured or the insurer, depending on the circumstances of the particular case. This makes sense, for if the broker or agent fails to pay earned premiums to the insurer, then the insured will not be covered, and if the broker or agent fails to pay unearned premiums to the insured, then the insured will not have received the benefit of its bargain. But nothing in either section of the statute gives either insured or insurer the right to monies other than the premiums agreed to in their contracts.

Subsection 375.051.3 confirms this reading. It states that "[n]othing in this section shall be construed to require any insurance producer to maintain a separate bank account or deposit for the funds of each payor, as long as the funds so held are reasonably ascertainable from the books of account and records of the insurance producer." § 375.051.3. This provision would not be needed unless brokers were permitted to put premiums into their own accounts. Yet the statute imposes no requirement on brokers to segregate or account for interest earned on those funds, nor does it otherwise suggest that insureds have any legal right to such interest.

For the reasons already noted, to extend the common law to impose such a duty would be particularly inappropriate in the context of an insurance broker's limited and often dual role as agent for the insured and insurer and in light of the legislature's failure to impose such a duty in this highly regulated area.

### E. Contingent Commissions

As noted, brokers are independent agents rather than employees, and normally they earn their living through commissions paid by insurers. *See Jeffery E. Thomas and Francis J. Mootz, III, New Appleman on Insurance Law Library Edition 2–19 (2011)* (explaining that "a broker typically ... is compensated by way of commissions paid by the insurers with which he places coverage"). But Emerson alleges that Marsh breached its fiduciary duty when it secretly agreed to accept additional contingent commissions from insurers to which it steered business. Emerson said this prejudiced it because it prevented Marsh from obtaining insurance meeting Emerson's needs at the lowest possible cost.[9]

■ This Court need not determine whether Marsh's receipt of contingent commissions would constitute a violation of the duty of loyalty or the duty to use reasonable care, skill and diligence in procuring insurance under the common law,[10]

---

9. For the reasons discussed earlier, this Court has held that a broker does not have a common law duty to obtain the lowest cost insurance possible, although the common law does impose fiduciary duties on the broker to remain loyal to the insured and to use reasonable care, skill and diligence to procure insurance.

10. *Compare Cuomo v. Wells Fargo Ins. Serv., Inc.,* 16 N.Y.3d 166, 919 N.Y.S.2d 481, 944

because the legislature again has acted in this area by specifically authorizing a broker to obtain commissions from insurers with which it places insurance. Section 375.116 specifically states:

1. An insurance carrier or agent thereof or broker may pay money, commissions or brokerage, or give or allow anything of value, for or on account of negotiating contracts of insurance, or placing or soliciting or effecting contracts of insurance, to a duly licensed broker.

2. Nothing in this chapter shall abridge or restrict the freedom of contract of insurance carriers or agents thereof or brokers with reference to the amount of commissions or fees to be paid to such brokers *and such payments are expressly authorized.*

*Id.* (emphasis added).

Emerson admits that section 375.116 expressly authorizes a broker to receive commissions. It does not distinguish between contingent and other commissions. This Court rejects Emerson's request that the Court nonetheless hold that this authorization applies only to the broker-insurer relationship and also hold that Marsh's statutorily authorized receipt of contingent commissions nonetheless violates the broker-insured relationship. The legislature clearly and unambiguously has held that such payments are authorized. It is not for this Court to substitute its own view of public policy for that expressly stated by the legislature.

*F. Duty to Disclose*

Emerson alternatively argues that even if Missouri statutes permit a broker to earn contingent commissions, a broker's duty of loyalty requires it to inform the insured that it is receiving such contingent commissions. Marsh counters that if the broker had such a duty, the legislature would have said so in section 375.116, and its silence on this subject should be taken as a rejection of any such disclosure requirement.

Section 375.116 does not purport to replace the common law in regard to broker commissions or to set out all of a broker's duties to an insured. Its silence on this or other issues regarding brokers is just that—silence. Nothing in the language of section 375.116 or any other cited statute suggests that the legislature intended to address the issue of disclosure. *See Overcast v. Billings Mut. Ins. Co.,* 11 S.W.3d 62, 69–70 (Mo. banc 2000) (holding "[t]o read words and concepts into our statutes that the general assembly did not write shows disrespect both for the general assembly and the common law, which the legislature has the power expressly to displace").

■ Whether Marsh had a duty to disclose these contingent commissions, therefore, must be governed by common law agency principles. Inherent in a fiduciary relationship and its resulting duty of loyalty is the obligation of the agent not to engage in self-dealing by "acquir[ing] a material benefit from a third party in connection with transactions conducted . . . on behalf of the principal." *Restatement (Third) of Agency* § 8.02; *see also Scanwell,* 162 S.W.3d at 479–80. But the receipt of commissions cannot itself be a violation of this principle, for, as noted, a

N.E.2d 1120, 1122–23 (2011) (finding broker's receipt of undisclosed contingent commissions from insurers did not constitute self-dealing in violation of the broker's duty of loyalty to insureds), *with Connecticut v. Acordia, Inc.,* No. X10UWYCV074020455S, 2010

WL 1752167, at *6–8 (Conn.Super. Apr. 19, 2010) (finding broker's receipt of undisclosed contingent commissions created conflict of interest and violated broker's duty of loyalty to insured).

broker is paid by commission, not by salary. It is the nature of its business and of its dual agency. It procures insurance for the insured, but it remits premiums and receives commissions from the insurer. No case has been cited, applying Restatement principles or otherwise, that finds the receipt of commissions from the insurer to be self-dealing. No case has been cited that requires the broker to disclose to the insured that it receives such commissions.

 Again, Emerson argues that contingent commissions are different, because they create a conflict of interest on the part of a broker, which will be inclined to steer the insured to those insurers that will give it the biggest contingent commissions and that the broker, therefore, has a duty at least to disclose that it receives such commissions. While this argument has surface appeal, it must fail in the face of section 375.116, which states that the payment of commissions from the insurer to a broker is "expressly authorized" and which makes no distinction between ordinary and contingent commissions. Receipt of contingent commissions, therefore, is not a breach of a duty of loyalty. No basis has been cited as to why—in the absence of fraud, misrepresentation, conversion or agreement—a broker would have a duty to disclose contingent commissions any more than it would have a duty to disclose other statutorily authorized aspects of its financial arrangements. *See* § 375.144, RSMo Supp.2010 (proscribing misrepresentation or concealment of material facts in insurance sales); *Jeffery E. Thomas and Francis J. Mootz, III, New Appleman on Insurance Law Library Edition 2–58 (2011)* ("[brokers] have no duty to disclose their compensation to insureds unless specifically asked to do so").

No allegations of fraud or similar improprieties are made here, however. Emerson has cited no authority imposing such a duty of disclosure in the absence of such conduct and where such payments are specifically authorized by statute. In the absence of such authority, this Court has no basis for finding an inherent fiduciary duty to disclose receipt of commissions in this highly regulated area.

## IV. DUTIES ASSUMED BY CONTRACT OR COURSE OF CONDUCT

 This Court's analysis does not mean that Marsh was free to obtain insurance that did not meet Emerson's needs or that was unreasonably costly or imprudent. Marsh had a fiduciary duty to use reasonable care, skill and diligence in procuring insurance for Emerson. Any such failure would be actionable, not because it is a breach of a duty of loyalty or of an independent obligation to disclose Marsh's financial arrangements, but because it would constitute a failure to exercise the degree of care required in procuring a policy for the insured.

Moreover, while this Court holds that a duty to disclose the receipt of premium interest or contingent commissions and a duty to obtain the lowest possible cost insurance are not inherent parts of the broker-insured relationship, such additional duties may be assumed by brokers. Although Emerson's petition is very brief and may be subject to a motion for a more definite statement, it is sufficient to raise the issue of whether Marsh, either by contract, course of conduct during its more than 20–year association with Emerson or a combination of both, assumed obligations beyond the normal duty of all insurance brokers to use reasonable care, skill and diligence in procuring insurance on behalf of insureds.

That appears to be what happened in *Zeff,* in which this Court found that the

long-term relationship between the broker and the insured justified the insured's reliance on the broker to notify the insured if a policy expired or was cancelled. 389 S.W.2d at 795. *Zeff* thereby implicitly recognized that the nature of a broker's duty may vary depending on the relationship of the parties and any agreements between them. *Id.*

This is in accord with the *Restatement (Third) of Agency,* which states:

> Subject to any agreement with the principal, an agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents in similar circumstances. Special skills or knowledge possessed by an agent are circumstances to be taken into account in determining whether the agent acted with due care and diligence. If an agent claims to possess special skills or knowledge, the agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents with such skills or knowledge.

§ 8.08; *see also Manzella,* 965 S.W.2d at 227 (finding an insurance agent's duties to the insured may expand if there is "a special relationship or extended agency agreement between" them); *Kap–Pel Fabrics,* 402 S.W.2d at 53–54 (accord).

Because Marsh was granted judgment on the pleadings, there is no factual record showing the nature of the more than 20–year relationship between Marsh and Emerson, nor does the record show whether the parties entered into any written or oral agreements imposing additional duties on Marsh during some or all of the parties' long relationship. The parties were unable to agree in this Court whether such agreements exist or whether expectations arose through the parties' course of dealing that imposed additional duties on Marsh to disclose contingent commissions or interest it earned on premiums or to acquire the lowest cost insurance that went beyond the normal duty of brokers to use good faith, reasonable care, skill and diligence in procuring insurance for their clients.

Furthermore, there is no evidence showing whether lower cost insurance was readily available from insurers that did not offer Marsh contingent commissions, much less whether Marsh's failure to obtain it was costly to Emerson and, if so, whether this constituted a breach of its duty to use reasonable skill to procure insurance in light of the fact that a broker normally has no duty to scour the market for the best priced insurance or to advise the insured as to what insurance would best meet its needs.[11]

In sum, the record is devoid of the evidence necessary to determine the scope of the fiduciary duties Marsh owed to Emerson or whether Marsh's conduct violated those duties.

## V. CONCLUSION

The existence and scope of the fiduciary duties owed by Marsh to Emerson depend on the extent of the relationship between the parties as well as the nature of any agreements that existed between them. It was premature, therefore, to determine that, as a matter of law, Marsh did not breach any fiduciary duties owed to Emerson. The judgment of the trial court is reversed, and the case is remanded.

---

11. Marsh argues that the record ultimately may show that Marsh's favorable contractual relationships with certain insurers allowed it to obtain more types of insurance, or more reasonably priced insurance, or insurance that better met Emerson's unusual insurance needs, and, therefore, actually benefited Emerson.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER and PRICE, JJ., and ATWELL, Sp.J., concur.

DRAPER, J., not participating.