

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

KNOCKERBALL MIDMO, LLC, )
)
Appellant, )
) **WD85458**
v. )
) **OPINION FILED:**
) **May 9, 2023**
McGOWAN & COMPANY, INC. d/b/a )
McGOWAN EXCESS & CASUALTY, )
)
Respondent. )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Four:** Gary D. Witt, Chief Judge, Presiding,
Mark D. Pfeiffer, Judge, and Mason R. Gebhardt, Special Judge

Knockerball MidMo, LLC ("Knockerball") appeals from the judgment of the Circuit

Court of Cole County, Missouri ("trial court"), granting McGowan & Company, Inc.'s

("McGowan") motion for summary judgment on Knockerball's claims for negligence and

breach of fiduciary duties. Because the summary judgment record demonstrates that

Knockerball has failed to demonstrate that it sustained damages as a direct result of any

alleged tortious misconduct of McGowan, we affirm.

**Factual and Procedural Background**[1]

The relevant persons and entities to understanding the background of this case are as follows:

- At all relevant times, Knockerball operated a sports activity related business in which it charged a fee for patrons to use its activity premises.

- Mr. Derek Hart ("Hart"), a patron of Knockerball, was injured at Knockerball's premises on December 23, 2016, and was alleged to have been paralyzed as a result of his injuries.

- At all relevant times, McGowan was a specialty lines insurance broker hired by, and acting as the agent for, Knockerball with respect to acquiring liability insurance for Knockerball's business operations.[2]

- Atlantic Specialty Insurance Company is a general liability insurance company ("Liability Insurer").

- At all relevant times, Sportsinsurance.com, Inc. ("Sportsinsurance") was a managing general agent for Liability Insurer.[3]

McGowan, in its capacity as Knockerball's insurance broker, and Sportsinsurance, in its capacity as managing general agent for Liability Insurer, assisted in procuring

---

[1] On appeal from a summary judgment ruling, we present the facts in the form as directed by *Green v. Fotoohighiam*, 606 S.W.3d 113, 117-18 (Mo. banc 2020).

[2] Knockerball expressly alleges in its lawsuit against McGowan: "At all relevant times, McGowan was acting as Knockerball's agent with respect to obtaining insurance and handling any claims."

[3] Knockerball expressly alleges in its lawsuit against Sportsinsurance: "At all relevant times, Sportsinsurance [was] acting as the agent[] of [Liability Insurer], including, but not limited to, for purposes of receiving notice of claims under the Policy."

general liability insurance coverage for Knockerball in the amount of $1 million and the liability insurance policy covered the time period when Hart was severely injured on Knockerball's premises.

On January 11, 2017, Hart filed a lawsuit against Knockerball for personal injuries, Case No. 17AC-CC00023 (the "Underlying Suit"). Knockerball's managing member was served with the petition and summons in the Underlying Suit on January 23, 2017, and promptly notified McGowan of the Underlying Suit and provided a copy of the petition to McGowan. McGowan's representative assured Knockerball's managing member that McGowan would "handle it."

However, through a variety of missteps by McGowan, Sportsinsurance, and Liability Insurer, no responsive pleading was timely filed on behalf of Knockerball and an order of interlocutory default against Knockerball was entered in the Underlying Suit on March 31, 2017.

Knockerball then retained counsel and, on May 18, 2017, entered into an agreement with Hart pursuant to the provisions of section 537.065[4] ("the 537.065 Agreement").[5] The 537.065 Agreement contained the following provisions:

> **NOW THEREFORE**, Hart and Knockerball and [Knockerball's managing member], for the consideration of TEN DOLLARS ($10.00) provided to Hart this day by Knockerball and [managing member] and the mutual promises contained herein, the receipt and sufficiency of which is

---

[4] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

[5] Knockerball and Hart, by and through their respective counsel, entered into an undated Addendum to the section 537.065 Agreement in which (in pertinent part) they enlarged the scope of additional third party claims to include claims against McGowan.

hereby acknowledged, agree (pursuant to 537.065 RSMo. and/or other applicable law), as follows:

1.  Hart agrees, pursuant to Section 537.065 RSMo., and/or applicable law, that neither he nor any person, firm, corporation, or other entity claiming by or through him, will levy execution by garnishment or otherwise provided by law, or otherwise collect or attempt to collect on any property, asset, or right of Knockerball or [Knockerball's managing member], except against the following specific assets:

    a.  The assets of any insurer that insures the legal liability of Knockerball, including, but not limited to, the assets of the [Liability Insurer] Policy;

    b.  Any proceeds of any cause of action or claim that Knockerball has or may have against [Liability Insurer] or any other insurer for their refusal to settle, defend, and/or indemnify Knockerball in the Lawsuit or any other claim resulting from the Accident including, but not limited to, bad faith, breach of fiduciary duty, negligence, or professional liability.

    c.  At the conclusion of any and all litigation referenced herein, whether favorable or unfavorable and regardless of the amount of proceeds realized from such litigation, if any, Hart will file a Satisfaction of Judgment in any action in favor of Knockerball.

2.  Knockerball and [Knockerball's managing member] agree to fully cooperate and use their best efforts in the pursuit and/or defense of any equitable garnishment and/or declaratory judgment suit (in order to obtain a declaration that [Liability Insurer] does provide coverage for the underlying claim), and in the pursuit of all claims against [Liability Insurer] (including, but not limited to, any claims for bad faith, breach of fiduciary duty, negligence, or professional liability against [Liability Insurer] arising out of [Liability Insurer's] or any other insurer's failure to settle, defend, and/or indemnify Knockerball in the underlying action).

4

a.      Any proceeds that are recovered by Knockerball or [Knockerball's managing member] in pursuing said claims against [Liability Insurer] shall be shared between Hart and Knockerball with Hart retaining 90% of any such proceeds up to the amount of any judgment obtained by Hart against Knockerball in the Lawsuit and Knockerball retaining 10% of any such proceeds and all amounts after Hart has been paid all of the amounts due under any judgment obtained against Knockerball in the Lawsuit.

Thereafter, a bench trial on damages was held on July 11, 2017, at which Knockerball did not cross-examine witnesses or object to the evidence Hart's attorney offered. On July 13, 2017, the court in the Underlying Suit entered a Final Judgment for Hart against Knockerball in the amount of $44,631,268.99 with interest at the rate of 6.16 percent.

Following the entry of judgment in the Underlying Suit, Hart pursued equitable garnishment against Liability Insurer for the full amount of the judgment in the Underlying Suit, and Knockerball pursued bad faith, negligence, and breach of fiduciary duty claims against Liability Insurer and its managing general agent, Sportsinsurance. These collective lawsuits eventually resulted in a January 2019 settlement agreement in which Liability Insurer agreed to pay $30 million to Hart to settle all claims against Liability Insurer. Of the $30 million paid to Hart by Liability Insurer, Knockerball received $1.25 million.

All claims between Hart, Liability Insurer, and Sportsinsurance were dismissed. The only remaining pending claims then became those that were asserted by Knockerball against McGowan for negligence and breach of fiduciary duties.

It is undisputed that Knockerball did not incur any attorney's fees for the defense of the Underlying Suit. And, Hart is prohibited from attempting to collect any portion of the judgment in the Underlying Suit against Knockerball or Knockerball's managing member.

McGowan filed its Motion for Summary Judgment on September 17, 2021, alleging that Knockerball's claims against McGowan failed as a matter of law because Knockerball could not establish that it was damaged as a result of McGowan's alleged tortious misconduct. The trial court held a hearing on the motion and entered its Judgment on May 11, 2022. The trial court found that it was undisputed that not only was Knockerball protected from liability on Hart's claims, it also stood to collect in excess of $1 million as a result of the resolution of actual coverage claims, therefore it was "difficult to see how Knockerball has been damaged **and** that such damage was proximately caused by McGowan's conduct." The trial court concluded that McGowan was entitled to summary judgment as a matter of law on Knockerball's claims for negligence, negligent procurement of insurance, breach of fiduciary duty, and breach of the duty of loyalty because Knockerball could not establish either the damages or the causation elements of the claims.

Knockerball timely appealed.

## Standard of Review

In *Green v. Fotoohighiam*, 606 S.W.3d 113 (Mo. banc 2020), the Missouri Supreme Court outlined the standard of review for summary judgment:

The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

. . . .

The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record.

*Id*. at 115-16 (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)). "'In addition, the non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial. Rule 74.04(c)(2), (c)(4). Facts not properly supported under Rule 74.04(c)(2) or (c)(4) are deemed admitted.'" *Id*. at 116 (quoting *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014)). "'[A] summary judgment, like any trial court judgment, can be affirmed on appeal by any appropriate theory supported by the record.'" *Rowland v. Quevreaux, Trustee of Keith A. Quevreaux Revocable Tr. u/t/a Dated July 23, 2012*, 621 S.W.3d 665, 668 (Mo. App. W.D. 2021) (quoting *Mo. Bankers Ass'n, Inc. v. St. Louis Cnty*., 448 S.W.3d 267, 270-71 (Mo. banc 2014)).

**Analysis**

In two points on appeal, Knockerball asserts that the trial court erred in its damages and causation analysis. Because we conclude that the summary judgment record demonstrates that Knockerball cannot establish any damages caused by the alleged tortious misconduct of McGowan, Knockerball's points on appeal must fail.

As an initial matter, it is important to discuss what this case is *not* about. This case is *not* a "bad faith refusal to settle" case against a liability insurer or that insurer's general agent. It is no coincidence that Knockerball asserted "bad faith" claims against both Liability Insurer and Sportsinsurance but *not* against McGowan.

> [A] bad faith refusal to settle action will lie when a *liability insurer*: (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy.

*Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 827 (Mo. banc 2014) (emphasis added).

Because this case does *not* involve a "bad faith" claim against McGowan, Knockerball's reliance upon "bad faith" case precedent for its damages analysis is misplaced.

Simply put, there is a difference between an insurance broker such as McGowan and a general agent for the insurer (*i.e.*, Sportsinsurance). Our Supreme Court has gone to lengths to describe the differences:

> It is helpful to understand the difference between an insurance agent and an insurance broker such as [McGowan]. An insurance agent works for and acts as an agent for a particular insurer or insurers. By definition an

8

insurance agent is ordinarily an agent of the insurer and not an agent of the insured. A general agent for the insurer usually will be able to enter into contracts binding the insurer and accept premiums.

While an agent represents the insurer, an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured. When an insurance broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence.

As is the case with other agents, this means a broker is a fiduciary with respect to matters within the scope of his agency. . . .

*Emerson Elec. Co. v. Marsh & McLennan Co.*, 362 S.W.3d 7, 12-13 (Mo. banc 2012) (citations omitted) (internal quotation marks omitted); *see also Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 496 (Mo. App. E.D. 2021).

Here, then, McGowan is *not* a liability insurer and McGowan is *not* a general agent for Liability Insurer. Instead, McGowan is an insurance broker and represented its customer, Knockerball, to assist Knockerball in procuring insurance coverage and assisting Knockerball when a claim was asserted against Knockerball. Thus, while the claims asserted against McGowan for negligence and breach of fiduciary duties are legally available claims, the elements of those claims are different than a "bad faith" claim against an insurer or the agent for that insurer.

Knockerball's claims against McGowan are for negligence (Count I), breach of fiduciary duty (Count II), and breach of the duty of loyalty (Count III).[6] Damages are an

---

[6] "[W]hen a broker is acting as the agent of an insured, it has a fiduciary duty to perform its duties with reasonable care, skill and diligence. This . . . necessarily includes a duty of loyalty to the insured during the scope and course of that agency." *Emerson*

essential element of each of the asserted claims. *Brock v. Dunne*, 637 S.W.3d 22, 29 n.8 (Mo. banc 2021) (listing the elements of a negligence claim: "(1) legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property" (internal quotation marks omitted)); *Henry v. Farmers Ins. Co.*, 444 S.W.3d 471, 480 (Mo. App. W.D. 2014) ("To establish a claim for breach of a fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty between the plaintiff and the defending party; (2) '"that the defending party breached the duty"'; and (3) '"that the breach caused the [plaintiff] to suffer harm."'" (quoting *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012)). Thus, harm or damages caused by the breach is an essential element of a breach of fiduciary duty claim.").

In each of the three counts against McGowan, Knockerball's only allegation as to damages is that it "suffered damages in the amount of the judgment entered against it and in favor of Plaintiff Hart ($44,631,268.99)."

But, as has been discussed earlier in this opinion, as a result of the 537.065 Agreement, Knockerball is *not* exposed to any liability to pay *any* portion of the judgment in the Underlying Suit.

Section 537.065 provides, in pertinent part, that a claimant and a tortfeasor may contract to limit recovery of damages to specified assets or an insurance contract:

<hr>

*Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 9 (Mo. banc 2012). Accordingly, the duty of loyalty is subsumed within fiduciary duty.

10

> Any person having an unliquidated claim for damages against a tort-feasor, on account of personal injuries, bodily injuries, or death may enter into a contract with such tort-feasor or any insurer on his or her behalf or both if the insurer has refused to withdraw a reservation of rights or declined coverage for such unliquidated claim, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither such person nor any other person, firm, or corporation claiming by or through him or her will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract.

§ 537.065.1.

And, under the 537.065 Agreement relevant to this case, Hart agreed that he would not levy execution by garnishment or otherwise provided by law, or otherwise collect or attempt to collect on any property, asset, or right of Knockerball, except against the following specific assets:

> a. The assets of any insurer that insures the legal liability of Knockerball, including, but not limited to, the assets of [Liability Insurer's] Policy;

> b. Any proceeds of any cause of action or claim that Knockerball has or may have against [Liability Insurer] or any other insurer for their refusal to settle, defend, and/or indemnify Knockerball in the Lawsuit or any other Claim resulting from the Accident including, but not limited to, bad faith, breach of fiduciary duty, negligence, or professional liability.

The 537.065 Agreement further provided that any proceeds recovered by Knockerball or Knockerball's managing member in pursuing claims against Liability Insurer would be shared between Hart and Knockerball with Hart retaining 90% of any such proceeds up to the amount of any judgment obtained by Hart against Knockerball in

11

the Underlying Suit and Knockerball retaining 10% of any such proceeds and all amounts after Hart had been paid all of the amounts due under any judgment obtained against Knockerball in the Underlying Suit.

In January 2019, Hart, Knockerball, and Liability Insurer entered into the Settlement Agreement, which provided for a $30 million payment by Liability Insurer to Hart with an agreement by Hart not to pursue any further claims against Liability Insurer. Of the $30 million paid to Hart by Liability Insurer under the Settlement Agreement, Knockerball received $1.25 million. In addition, Knockerball did not pay any attorney's fees for the defense of the Underlying Suit.

This case is similar to the scenario in *Benton House, LLC v. Cook & Younts Insurance, Inc.*, 249 S.W.3d 878 (Mo. App. W.D. 2008), *superseded on other grounds by statute* 5 U.S.C.A. § 8902(m)(1), *as stated in Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 93 (2017).

In *Benton House*, the insured brought an action against its insurance broker for negligence and breach of contract claiming that the insurance broker had failed to procure the proper insurance for the insured's business operations. *Id*. at 879. At the time the original liability insurance policy was procured, the insured was operating an office building; but, at the time the claim was made against the insured, the insured was operating a residential care facility. *Id.* at 879-80. Hence, when a nursing home wrongful death claim was asserted against the insured and the insured notified the liability insurer of the claim, the liability insurer sent a reservation of rights letter to the insured in which it expressly reserved the right to deny that the liability policy covered

12

the claim. *Id.* at 880. However, the liability insurer actually settled the lawsuit on behalf of its insured for $500,000 and, though the insured and liability insurer entered into an agreement in which the insured would have to repay to its liability insurer the settlement payment if it recovered on any claims asserted against its insurance broker, the agreement made clear that the insured was not exposed to liability to its insurer if it failed to recover anything in such a claim. *Id.* at 880-81.

The circuit court granted summary judgment in favor of the insurance broker, and the insured appealed, asserting that the trial court erred in concluding that the insured sustained no damages resulting from the insurance broker's failure to procure adequate insurance coverage. *Id*. at 881. This Court concluded that the trial court correctly decided that the insured sustained no damages resulting from the insurance agency's failure to procure insurance coverage. *Id*. The Court noted that "to prevail on its claims for negligence and for breach of contract, [the insured] had to show that it suffered damages. In this case, [the insured] suffered no damages from [the insurance broker's] failure to procure insurance coverage for [the insured's] operation of a residential care facility because [the insured's] insurer . . . settled the [wrongful death tort] claim." *Id*. (citations omitted).

Similarly, "[i]n Missouri, pecuniary loss is an intrinsic element of an action sounding in fraud or deceit[.]" *Henry*, 444 S.W.3d at 481 (internal quotation marks omitted). "Hence, [p]roof of substantial injury and damage is essential to recovery in an action for fraud and deceit." *Id*. (internal quotation marks omitted). "Because breach of a fiduciary duty is constructive fraud, it is an 'action sounding in fraud or deceit.'" *Id*.

13

"Pecuniary damage is, therefore, an intrinsic element of a breach of fiduciary duty claim and is essential to recovery." *Id*.

Here, the judgment in the Underlying Suit was entered *after* Hart agreed that he would *not* levy execution by garnishment or otherwise provided by law, or otherwise collect or attempt to collect on any property, asset, or right of Knockerball for any portion of the Judgment entered against it in the Underlying Suit. Instead of Knockerball suffering damages from a $44 million default judgment in the Underlying Suit, it actually received $1.25 million from Liability Insurer's settlement of Hart's claims against Liability Insurer. Thus, Knockerball actually *profited* from its own business premises negligence due to the corresponding settlement of Hart's coverage and bad faith claims.

Accordingly, Knockerball has not been damaged as a result of the judgment entered against it in the Underlying Suit. Knockerball has not established that it sustained pecuniary damage as a result of McGowan's alleged negligence and breach of fiduciary duties to Knockerball as Knockerball's insurance broker.

Without damages, the trial court's summary judgment ruling is not erroneous, and Knockerball's appeal is without merit.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Gary D. Witt, Chief Judge, and Mason R. Gebhardt, Special Judge, concur.

14