**Charles M. HALL, Plaintiff-Respondent,**

**v.**

**Robert S. CHARLTON, Defendant-Appellant.**

**No. 24965.**

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 6, 1969.

Application to Transfer Denied Dec. 8, 1969.

Glenn McCann, Lebert D. Shultz, Knipmeyer, McCann & Millett, Kansas City, for appellant.

Wm. Harrison Norton, Williams, Norton & Pollard, North Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff sued defendants, Eagle Star Insurance Company, Ltd., and Robert S. Charlton, in three counts. The amount of damages prayed was $13,250.00 on each count. The first count was against Eagle Star on an insurance policy, as issued by it to plaintiff, on plaintiff's aircraft, in the sum of $13,250.00. Count two is also against Eagle Star on the same policy, praying for reformation of the policy and for judgment of $13,250.00. Count three is against defendant Charlton, an insurance broker, alleging false and negligent representation and interpretation of the Eagle Star policy by Charlton. The prayer was for judgment in the sum of $13,250.00. The cause was tried to the Court. The findings and judgment on the first two counts were against plaintiff and in favor of Eagle Star. No appeal was taken as to those judgments. In the third count, the Court found for plaintiff and against Charlton, and rendered judgment for plaintiff and against Charlton in the sum of $10,000.00. Defendant Charlton appeals.

Defendant presents four points in his brief. Points three and four thereof are concerned with alleged errors in connection with the Court's findings and judgment as to counts one and two of the petition. Those counts were directed to the liability of Eagle Star alone. No appeal was taken as to that part of the judgment. We will not discuss those points herein because they are irrelevant to the issues involved in this appeal.

However, we will state the entire factual situation, as developed in the evidence, in order to more clearly understand the facts and issues we must rule in the judgment here involved. The transcript consists of two bulky volumes. It includes many documents and much typewritten matter, as well as the testimony of witnesses, including depositions. It would not be practical to refer to the documentary and other evidence in detail. We will, therefore, endeavor to condense the mass of evidence insofar as we are able.

The incident giving rise to this litigation was the crash of plaintiff's aircraft into Lake Chelatna, 120 miles northwest of Anchorage, Alaska, July 1963. The craft sank to the bottom of the lake and one woman passenger was killed. The craft was heavily damaged. At that time, and prior thereto, plaintiff was employed as a travelling sales representative of Natural Gas Odorizing Company. His permanent residence was at Houston, Texas, but his territory consisted of ten north central states and the state of Alaska. For convenience he maintained a hotel residence at Excelsior Springs, Missouri. He owned and used his plane in order to aid him in his business, moving around in his territory.

We have read the transcript and we state the following facts from the testimony, including depositions, and from Charlton's "Statement of Facts" contained in his brief.

Eagle Star is a stock company registered in Missouri as a foreign insurance company. It does business through an insurance pool known as American Aviation Underwriters. Cravens, Dargen & Company acted as manager of American Aviation Underwriters and its acts were binding on Eagle Star. Defendant Charlton, d/b/a Charlton Insurance Agency, was the producing representative of Aviation Underwriters and Cravens, Dargen. He received commissions and remitted premiums but he had no authority to bind Eagle Star on aviation risks.

Plaintiff first purchased an aviation policy from Charlton in September, 1961.

At that time he owned a 1959 Cessna plane which was insured by Royal Globe Insurance Company through Charlton. Charlton wrote American Aviation on behalf of plaintiff whose name Charlton affixed to the application, with plaintiff's consent. In the application it was stated that no coverage was requested beyond 100 miles of the boundaries of Continental United States, excluding Alaska. The policy was issued by Eagle Star excluding coverage while the plane was in Alaska.

March 4, 1963, plaintiff wrote Charlton that he would purchase a different plane, a Piper Comanche; that the value was $13,500.00; that there would be a mortgage on it payable to McGregor Park National Bank of Houston; that he would fly this aircraft to Alaska in June, 1963; that he would like a bid from Charlton on coverage. On March 5, 1963, plaintiff purchased the new plane, a Piper Comanche, and on March 8, 1963, telephoned Charlton and told him that he had acquired the new plane and that he would fly it to Alaska. He stated in evidence that Charlton assured Hall that he was covered for flying in Alaska. Eagle Star issued the new policy indorsements (which excluded coverage in Alaska).

The plane crashed in Alaska on July 1, 1963. Plaintiff notified Charlton promptly. Charlton notified American Aviation Underwriters of the loss. During the latter part of July, 1963, plaintiff again inquired of Charlton regarding coverage in Alaska and Charlton assured him there was such coverage. Charlton, at all times, contended that such coverage existed and contends that Eagle Star made a mistake in not including it in the policy; but Eagle Star always denied liability for the loss. However, Eagle Star paid McGregor Park National Bank the unpaid balance of its note and mortgage, under its "breach of warranty" indorsement. Eagle Star took an assignment from McGregor. It asserted that claim against plaintiff by way of counter-claim in this litigation. The Court gave Eagle Star judgment therefor, as against plaintiff, from which no appeal was taken.

There was evidence to the effect that the policy, bearing on its face a stamp "Charlton Insurance Agency" was mailed to plaintiff, who received it and kept it at his hotel in Excelsior Springs. He stated that he did not read it, although there was apparently ample time therefor, prior to the crash. However, he stated that he could not read, *understand* and *interpret* insurance policies; that he habitually sought out one skilled in the insurance business, told him what coverage he desired, and trusted such agent to procure insurance to meet his needs; that this is what he did in the instant case. He stated, in effect, that he could not have properly understood it if he had read it.

Plaintiff stated that the policy on the Cessna, when he purchased it, had been procured by others and bore the Charlton Insurance Stamp; that, when it expired, he called Charlton and arranged for its renewal; that the renewal policy was mailed to him by Charlton, who billed him for the premium.

During plaintiff's examination he was asked a hypothetical question based on the deposition and testimony of Mr. Kippenham, an airplane salvage operator in Alaska. Plaintiff answered that Kippenham offered him $2500.00 for the salvage but that he could not accept it because, after paying Mr. Mower $2000.00 for retrieving the plane from the lake, he would have only $500.00 left, and that such a settlement would have compromised his claim for insurance. He stated that the plane, before the crash, was of the value of $13,500.00, plus additions he had made to equipment. Plaintiff stated that, after the crash, the engine was in the plane but was not operable; that the windshield was smashed; the left wing spar was demolished; the craft was damaged greatly in getting it out of the water; the entire fuselage was distorted; the tail was mutilated and the tail assembly was damaged.

Mr. Kippenham's deposition was filed in Circuit Court. Colloquy of counsel indicated that the judge examined exhibits attach-

ed to it during the trial. It was referred to by all of the parties a number of times during the trial, although it does not appear that it was formally introduced into evidence. Hypothetical questions were asked based on the contents of the deposition. It was filed as an exhibit. The Court and the parties treated it as though it had been introduced into evidence and we will do likewise in our determination of the facts.

Mr. Charlton testified that he had been in aviation insurance for many years and was registered agent for Eagle Star. On cross-examination he stated that he had read Mr. Kippenham's deposition wherein he evaluated the salvage of the craft at $2500.00 and that he knew of no other evaluation. He testified to the effect that he did not check the territorial coverage of the policy before delivering it to plaintiff; that he had never checked the territorial coverage on any policy of Eagle Star which he sold and delivered; that he did not check such coverage after plaintiff wrote him that he was going to buy another aircraft and fly it to Alaska and wanted coverage accordingly. He stated that plaintiff also called him by telephone and said that he had purchased another craft and asked if he would be covered in Alaska; that he assured plaintiff that there would be such coverage; that, after the loss occurred, he assured plaintiff that the loss was covered. He stated that he represented many insurance companies; that his agency had been in the family for one-hundred years; that the agency is a member of National Association of Independent Insurance Agents.

He also stated that he, himself, executed the plaintiff's application for the policy and signed plaintiff's name thereto; that he wrote in the application, in answer to the question of whether coverage was requested in Alaska, the answer "No"; that he had been plaintiff's agent in procuring numerous policies for him prior to this transaction.

The testimony of Mr. Kippenham was taken by defendants in the state of Alaska.

By stipulation between the parties it was filed as an exhibit for use of the court in this case. He had been, for some years, engaged in the purchasing of wrecked airplanes and rebuilding them for resale. He stated that he looked at the plane here involved with the object of purchasing the salvage; that he offered $2500.00 for it, where it rested and "as is"; that, in his best judgment, $2500.00 was its value; that he then learned that Mr. Mower, at Lake Chelatna, had charges of $2600.00 against the salvage for services in retrieving it from the lake; that he could not buy it at that price and took no further steps toward acquiring it.

Defendant Charlton contends that the Court erred in not (a) finding as a fact that plaintiff was contributorily negligent in failing to read his policy, that such negligence contributed to cause his loss, and that plaintiff is thereby estopped to recover from defendant Charlton and (b) in not ruling as a matter of law that plaintiff was contributorily negligent in failing to read his insurance policy and that such negligence contributed to cause his loss and that plaintiff is thereby estopped to recover from defendant Charlton.

Since this is a court tried case we will review it on both law and evidence. There are no real conflicts in the evidence. The controlling facts are as we have stated them. We will discuss the evidence concerning plaintiff's failure to read the policy during the period of some four months after he received it, and before the crash occurred. Defendant says this constituted contributory negligence as a matter of law and of fact. If plaintiff was not guilty of negligence under the facts, it is unnecessary to discuss his guilt as a matter of law.

██ Charlton had procured an aviation policy on the Cessna plane that plaintiff had before he purchased the Piper. That policy bore Charlton's stamp, when the plaintiff received it. Charlton stated that he had also procured other types of insurance policies for plaintiff. When plaintiff determined to buy a different

plane, he wrote Charlton of his plans, informed him that he intended to fly it to Alaska in June or July, and requested that there should be coverage when the plane was in Alaska. Charlton admitted that fact. Then, after the Piper was purchased, plaintiff telephoned Charlton and told him thereof. He also told him that he wanted coverage in Alaska. Charlton told him that such coverage was provided and that the risk was bound. Charlton admitted this fact. Charlton personally filled out the application for the policy. He procured the information therefor from plaintiff, apparently, by telephone. He signed plaintiff's name to the application form. He wrote into the application, in an appropriate place, "No" to the question of whether coverage was requested for Alaska.

Evidence, as to these facts, came from Charlton's own testimony. Plaintiff had every right, under these circumstances, to rely on Mr. Charlton because of his previous experience with him, and because of Charlton's assurance that Alaska was included in coverage and the risk was bound.

Furthermore, plaintiff explained why he did not read the policy, although he duly received it and kept it among his business papers at his hotel. He stated that he had no training in interpreting the language of insurance policies; that he had no legal training; that he could read but that he could not interpret and understand such language; that he habitually sought the services of a qualified insurance agent, explained what coverage he wanted, and relied on the agent to procure it for him, just as he did in this case.

■ The law with reference to a broker's liability to his principal for negligent failure to perform is thoroughly discussed by this Court in Kap-Pel Fabrics, Inc. v. R. B. Jones and Sons, 402 S.W.2d 49, 53. It is there said that a broker, who, with a view to earning a commission, undertakes to procure insurance for another and negligently fails to do so, will be liable in tort

or contract for damages suffered by his client. This is true because such a broker is the agent of insured and owes him a duty to exercise reasonable skill and diligence in its performance. The result reached in that decision is immaterial here because of the facts there involved.

In the Kap-Pel case, supra, the decision in Harris v. A. P. Nichols Inv. Company, Mo.App., 25 S.W.2d 484, was discussed. At page 488 it was pointed out that such action was not between an insured against his insurer, but between a client and his broker; that the principal, in that case, was entitled to rely upon and believe that, pursuant to the duties assumed by the agent, and under his instructions, to proceed on the theory and belief that his agent procured such a policy and that same was the one which the principal received by mail and paid therefor. There, he kept the policy for four months without reading it. It did not cover the loss of the insured property. Plaintiff recovered against the broker and this Court affirmed the judgment.

■ No man can set up another's act or conduct as ground for estoppel unless he has himself been misled or deceived by such act or conduct; nor can he set it up where he knew or had the same means of knowledge as to the truth as did the other party. Land Clearance for Redevelopment Authority v. Dunn, Mo., 416 S.W.2d 948, 951. That principle of law bars Charlton's defense of estoppel.

■ We hold that plaintiff was not guilty of any negligence in failing to read the policy and complain of its failure to cover the risk while in Alaska; and we hold that plaintiff was not estopped to claim and recover damages for his loss occasioned by the negligence of his broker in this case.

The only other point is the amount of damages proved. The parties are in agreement that the measure of damages to be applied is the difference between the value of

the plane before the loss and afterward, within the limits of insurance that he would have had if the policy had been valid. Plaintiff testified to the effect that the plane was worth $13,500.00 (plus the value of substantial equipment recently added) immediately prior to the crash. Mr. Kippenham, testifying as a qualified witness for defendants as to the value of salvage of crashed airplanes, stated that the value of the salvage after the crash, was $2500.-00, no more. If Charlton had procured a policy as he agreed to do, it would have covered the loss up to $13,250.00. This would indicate a loss of $10,750.00 which plaintiff is entitled to recover. However, the judgment is for $10,000.00 and there is no appeal therefrom.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.