GATEWAY HOTEL HOLDINGS, INC., Richfield Hospitality Services Inc., Richfield Holdings, Inc., Liberty Mutual Fire Insurance Company and Liberty Mutual Group, Appellants,

v.

CHAPMAN–SANDER, INC., and TOM Bormann, Respondents.

No. ED 97066–01.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 29, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

Debbie S. Champion, Victor H. Essen, II, St. Louis, MO, for appellant.

Robert E. Tucker, Ellen K. Siegel, St. Louis, MO, for respondent.

ROBERT G. DOWD, JR., Presiding Judge.

Gateway Hotel Holdings, Inc., Richfield Hospitality Services, Inc., Richfield Holdings, Inc. (collectively "the Regal") and Liberty Mutual Fire Insurance Company and Liberty Mutual Group (collectively "Liberty Mutual") appeal from the trial court's grant of summary judgment in favor of Chapman–Sander, Inc. ("Chapman–Sander") and Tom Bormann ("Bormann"). The Regal and Liberty Mutual contend the trial court erred in granting summary judgment in favor of Chapman–Sander and Bormann because: (1) there was a genuine issue of material fact regarding whether Chapman–Sander and Bormann fully performed their duties under the contract with Doug Hartmann Productions, L.L.C. ("Hartmann, L.L.C."), and (2) there was a genuine issue of material fact regarding whether the Regal and Liberty Mutual could prove a breach of duty in negligence. We reverse.

On December 15, 1998, the Regal entered into a contract with Hartmann, L.L.C. allowing Hartmann, L.L.C. to hold certain boxing matches at the hotel on January 29, 1999 ("the event"). The contract provided that, among other things, Hartmann, L.L.C. would obtain indemnity insurance in the amount of $5,000,000.00 for the event. Further, Hartmann, L.L.C. agreed to provide an ambulance on standby at the hotel for the event.

Before the event, Hartmann, L.L.C., through Chapman–Sander and Bormann, procured a commercial general liability policy with a limit of $1,000,000.00 from Legion Indemnity Company ("Legion") and a commercial excess liability policy with a limit of $4,000,000.00 in excess of the $1,000,000.00 underlying limits from Lexington Insurance Company ("Lexington").

The Legion policy contained the following athletic participant exclusions:

EXCLUSION—ATHLETIC OR SPORTS PARTICIPANTS

... with respect to any operations shown in the Schedule, this insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

Further, the Lexington policy contained the following athletic participant exclusion:

ATHLETIC PARTICIPANTS EXCLUSION...

This insurance does not apply to 'bodily injury' to any person engaged in:

1. Any athletic, exercise or sports activity; or

2. managing, coaching, or supervising such activity

Which you sponsor or which is conducted on premises you own, rent or control. 'Activity' as used herein includes travel

or activity in the course of travel to or from any destination for the purpose of practicing for or participating in any such athletic, exercise or sports activity.

Fernando Maldonado ("Maldonado") participated as a boxer in one of the boxing matches at the event. Several minutes after his match ended, Maldonado collapsed in his dressing room at the hotel. The ringside doctor assessed Maldonado and called for an ambulance. Hartmann, L.L.C. failed to have an ambulance on call at the hotel for the event.

Thereafter, Maldonado sued the Regal for injuries sustained by him at the event.[1] The trial court entered a judgment in favor of Maldonado in the amount of $13,700,000.00 on his claim for injuries arising out of an inherently dangerous activity due to Hartmann, L.L.C.'s failure to provide an ambulance and proper medical care at the event. The judgment was subsequently affirmed by the Missouri Court of Appeals in *Maldonado v. Gateway Hotel Holdings, L.L.C.*, 154 S.W.3d 303 (Mo.App. E.D.2003).

Following the resolution of the underlying Maldonado claim, the Regal and Liberty Mutual brought suit against Hartmann, L.L.C. and Doug Hartmann, as the president of Hartmann, L.L.C. for contribution, indemnity, and breach of contract for causing Maldonado's injuries.[2] The Regal and Liberty Mutual subsequently entered into an agreement with Hartmann, L.L.C. and Doug Hartmann whereby a consent judgment was entered for $6,749,688.80 against Hartmann, L.L.C. and Doug Hartmann. The Regal, Liberty Mutual, Hartmann, L.L.C., and Doug Hartmann entered into an assignment agreement as part of the consent judgment whereby the Regal and Liberty Mutual promised to collect its judgment only from the claims of Hartmann, L.L.C. and Doug Hartmann against Chapman–Sander and Bormann. Further, Hartmann, L.L.C. and Doug Hartmann agreed to convey and assign any and all claims against Chapman–Sander and Bormann for their failure to procure insurance coverage to the Regal and Liberty Mutual.

Thereafter, the Regal and Liberty Mutual brought suit against Chapman–Sander and Bormann for indemnity (Count I), breach of contract (Count II), negligence (Count III), breach of fiduciary duty (Count IV), and tortious interference with a contract (Count V). In addition, Hartmann, L.L.C., which assigned and conveyed its claims to the Regal and Liberty Mutual, brought claims against Chapman–Sander and Bormann for indemnity based on negligence (Count VI), indemnity based on breach of fiduciary duty (Count VII), indemnity based on breach of contract (Count VIII), negligence (Count IX), breach of fiduciary duty (Count X), and breach of contract (Count XI).

Chapman–Sander and Bormann filed a motion to dismiss in which they argued the Regal failed to state a claim for indemnity in Count I, could not make a claim for breach of contract as a third-party beneficiary of the contract between Hartmann, L.L.C. and Chapman–Sander in Count II,

---

1. Liberty Mutual was the general liability insurer for the Regal, and it requested that Hartmann, L.L.C.'s insurers, Legion and Lexington, indemnify the Regal in this suit, but both refused based on the athletic participant exclusions in their policies.

2. The Regal and Liberty Mutual also brought suit against Legion and Lexington for failing to provide coverage for the Maldonado claim.

Summary judgment was granted in favor of Lexington because the trial court found the athletic participant exclusion applied and the underlying insurance policy provided by Legion did not provide coverage. This judgment was affirmed in *Gateway Hotel Holdings, Inc. v. Lexington Ins. Co.*, 275 S.W.3d 268 (Mo.App. E.D.2008).

could not make a claim for negligence in Count III because Chapman–Sander owed no duty to the Regal, could not make a claim for breach of fiduciary duty in Count IV because the Regal could not show the existence of a duty owed to the Regal or the breach of such a duty, and could not make a claim for tortious interference with a contract in Count V. In addition, Chapman–Sander and Bormann argued that Hartmann, L.L.C. had no valid claim to assign to the Regal; thus, Counts VI–XI must fail. Further, Chapman–Sander and Bormann contended Hartmann L.L.C.'s claims for indemnity fail to state a claim upon which relief may be granted because there was no express or implied agreement to indemnify between Hartmann, L.L.C. and Chapman–Sander, and Hartmann L.L.C.'s negligence, breach of fiduciary duty, and breach of contract claims also fail to state a claim upon which relief may be granted. The Regal and Liberty Mutual filed suggestions in opposition to Chapman–Sander and Bormann's motion to dismiss arguing they adequately pled facts to support their claims.

The trial court granted the motion to dismiss in part and denied it in part. The trial court found the Regal failed to state a claim for indemnity in Count I as well as Counts VI, VII, and VIII for indemnity based on various theories. Thus, the trial court dismissed Counts I, VI, VII, VIII and denied the motion to dismiss as to the remaining counts.

Chapman–Sander and Bormann subsequently filed a motion for summary judgment with respect to Counts II, III, IV, V, IX, X, and XI. With respect to the Regal's claims for breach of contract in Counts II and XI, the trial court found Chapman–Sander and Bormann were entitled to summary judgment because it was uncontroverted that they procured the insurance for which they contracted. With respect

to the Regal's claims for negligence in Count III and IX, the court found the Regal would not be able to show Chapman–Sander and Bormann breached a duty to them, and, as a result, Chapman–Sander and Bormann were entitled to summary judgment. With respect to the Regal's claims for breach of fiduciary duty in Counts IV and X, the court found the Regal would not be able to show Chapman–Sander and Bormann breached a fiduciary duty to them, and, as a result, Chapman–Sander and Bormann were entitled to summary judgment. Lastly, with respect to Count V, tortious interference with a contract, the trial court found any alleged tortious interference could not have been the proximate cause of the Regal's damages, and, as a result, Chapman–Sander and Bormann were entitled to summary judgment on that claim. The trial court subsequently entered its judgment incorporating the order in which it made the above findings.

The Regal and Liberty Mutual appealed from that judgment. We issued an opinion July 10, 2012 reversing the trial court's grant of summary judgment in favor of Chapman–Sander and Bormann. Chapman–Sander and Bormann subsequently filed an application for transfer to the Supreme Court. The Supreme Court granted the application for transfer, and issued an order re-transferring the case to us for reconsideration in light of *Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7 (Mo. banc 2012). Thereafter, we issued an order to the parties directing them to file memoranda addressing the application of *Emerson Electric* to this appeal.

The Regal and Liberty Mutual filed a memorandum arguing *Emerson Electric* was not directly on point, only provided general guidance about the nature of a broker-insured agency relationship, and

that the general principles it espoused supported the original conclusion we reached in our July 10, 2012 opinion. On the other hand, Chapman–Sander and Bormann filed a memorandum arguing the duties of an insurance broker as set out in *Emerson Electric* demonstrate Chapman–Sander and Bormann did not breach any duty to Hartmann. Having considered the parties' memoranda, *Emerson Electric,* and the record on appeal, we reverse and remand.

■ The propriety of summary judgment is purely an issue of law. *Meramec Valley R–III School Dist. v. City of Eureka,* 281 S.W.3d 827, 835 (Mo.App. E.D. 2009). Accordingly, the standard of review on appeal regarding summary judgment is no different from that which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated its right to judgment as a matter of law. *Id.*

■ Our review of the grant of summary judgment is *de novo. Id.* Summary judgment is upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Meramec Valley R–III School Dist.,* 281 S.W.3d at 835. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's

cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* "Genuine" implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 378 (Mo. banc 1993). A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Where the "genuine issues" raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper. *Id.*

■ In their first point, the Regal and Liberty Mutual argue the trial court erred in granting summary judgment in favor of Chapman–Sander and Bormann on counts II and XI of the petition because there was a genuine issue of material fact regarding whether Chapman–Sander and Bormann fully performed their duties under the contract with Hartmann, L.L.C. Specifically, they contend the record contained evidence from which a reasonable jury could have concluded that Hartmann, L.L.C. requested insurance coverage for injuries to boxers and that Chapman–

Sanders and Bormann failed to procure such coverage. We agree.

■ A broker, who, with a view to earning a commission, undertakes to procure insurance for another and negligently fails to do so, will be liable in tort or contract for damages suffered by his client. *Hall v. Charlton,* 447 S.W.2d 5, 9 (Mo.App. W.D.1969). This is true because such a broker is the agent of the insured and owes him a duty to exercise reasonable skill and diligence in its performance. *Id.* In contrast, the court in *Emerson Electric* noted a broker's duty is limited. *Emerson Electric Co.,* 362 S.W.3d at 9. For example, a broker has no duty to advise an insured about what insurance he needs unless the broker specifically undertakes to do so. *Id.* However, if a broker is asked to procure particular insurance but fails to do so or fails to inform the insured that the delivered policy is not the one requested so that the insured can make a knowledgeable decision whether to accept the policy or pursue other insurance, the broker has breached its fiduciary duty to exercise reasonable care, skill and diligence in procuring insurance. *Id.* at 13. The *Emerson Electric* case also discusses various kinds of broker-client relationships, including dual agency, among others. *Id.* at 16. However, there is no evidence the agency relationship here was a dual agency relationship, and when reviewing the grant of summary judgment, the record is reviewed in the light most favorable to the party against whom judgment was entered.

The Regal and Liberty Mutual contend the trial court could not have concluded that Chapman–Sander and Bormann fully performed their contractual obligations to Hartmann, L.L.C. and the Regal without finding Hartmann, L.L.C. and the Regal never requested liability coverage for claims arising out of injuries to boxers at the event. The Regal and Liberty Mutual argue the trial court had to inappropriately weigh conflicting evidence about Bormann's dealings with Hartmann, L.L.C. to conclude: (1) Hartmann, L.L.C. never requested coverage for claims arising out of injuries to boxers; or (2) Hartmann, L.L.C., when presented with the specimen policy, understood that it was not getting coverage for claims arising out of injuries to boxers. Thus, the Regal and Liberty Mutual contend the trial court erred because there was clear, competent evidence that Hartmann, L.L.C. and the Regal requested liability coverage for claims arising out of injuries to boxers at the event, and there was not an alternative basis to enter summary judgment on the contract counts.

The record shows Bormann testified that when he was procuring the policy, his understanding was "they were looking for [ ] coverage to protect the hotel for crowd control, or not crowd control, for injury to a member of the crowd that might arise out of the existence of the event being held there." However, Bormann also testified the day after the Regal received the specimen copy, November 20, 1998, Doug Hartmann "called [him] back and said that he needed what he called athletic participant's coverage." Then while talking to him, Bormann "determined what he was really asking for was accident insurance for the fighters as opposed to liability coverage." In the meantime, Hartmann, L.L.C. and the Regal approved the specimen policy on December 7, 1998. According to Bormann, the next and last time he talked to Doug Hartmann about athletic participant's coverage or accident insurance was on December 22, 1998 when Doug Hartmann told Bormann he had purchased liability coverage from someone else. According to Bormann, the topic of insurance for the boxers never came up again.

Doug Hartmann testified regarding the policy he obtained from Chapman–Sander that although he did not remember a specific conversation where he asked Bormann to get a type of coverage that would cover an injury to a participant in a boxing match, that was always his understanding of what he was getting. Doug Hartmann testified the insurance policy he obtained from Chapman–Sander was to fulfill the insurance requirements the Regal imposed on him in order to have the event there.[3] Doug Hartmann testified "[his] understanding was that [he] had a $5 million policy that would cover [him] for liability coming from anything coming out of this event, if somebody tripped, if somebody got hurt in the ring, whatever. . . ." Doug Hartmann also testified he had obtained a separate liability policy from Lawrence Cole for "minor injuries, broken noses, stitches, stuff that—normal boxing type injuries" because of a requirement of the State of Missouri, but at no point did he testify that this policy was a substitute for the athletic participants' coverage he believed Bormann was procuring.

Doug Hartmann was deposed again in 2010 and he testified he told Bormann he needed "a general liability policy to cover everything that could go wrong at the event" and "[i]t was very clear what I was looking for which included injury to a fighter." While Doug Hartmann could not recall exactly what he said to Bormann, he testified he "absolutely" conveyed his concerns that a boxer might get hurt to Bormann, and he did not recall whether "he went into specifics," but that was the sole purpose of the insurance and he would not have purchased the insurance if he knew it did not cover athletic participants.

Thus, we find there is a genuine issue of material fact because the record shows Bormann testified the day after the Regal received the specimen copy, November 20, 1998, Doug Hartmann "called [him] back and said that he needed what he called athletic participant's coverage." Bormann's unilateral determination that what Hartmann "was really asking for was accident insurance for the fighters as opposed to liability coverage" is not sufficient to support a meeting of the minds. At the time of that conversation, Bormann redirected Doug Hartmann after determining what he was really asking for, but there is no evidence that Doug Hartmann agreed with Bormann's interpretation of what he was looking for. As noted above, a broker has no duty to advise an insured about what insurance he needs unless the broker specifically undertakes to do so. In effect, Bormann undertook to tell Doug Hartmann what kind of coverage he really wanted when Doug Hartmann told Bormann he needed "athletic participant's coverage." Doug Hartmann testified "[his] understanding was that [he] had a $5 million policy that would cover [him] for liability coming from anything coming out of this event, if somebody tripped, if somebody got hurt in the ring, whatever. . . ." Moreover, Doug Hartmann testified he would not have purchased the policy if he knew it did not provide coverage for injuries to the boxers. Thus, there are genuine issues of material fact regarding whether Bormann and Chapman–Sander procured the policy Hartmann, L.L.C. requested and for which he was contracted as well as whether Hartmann, L.L.C. understood the policy it received from Bormann and Chapman–Sander did not cover injuries to boxers.

3. The Regal had previously been sued in a separate case by a participant in a kickboxing event for a failure to make available adequate medical treatment after his fight. Thus, they alleged they were attempting to protect themselves against similar claims when they required Hartmann to get certain insurance for the event.

We note Hartmann, L.L.C.'s acceptance of the specimen copy does not automatically relieve Chapman–Sander and Bormann of their duty to procure the type of insurance Hartmann requested. Under similar circumstances, we have held that an insured's failure to read its own policy is not fatal to its cause of action for negligent failure to procure insurance. *See Busey Truck Equipment, Inc. v. American Family Mut. Ins. Co.,* 299 S.W.3d 735, 739 (Mo.App. E.D.2009) *and A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 389 (Mo.App. E.D.1998). In *Busey,* the court dealt with an insurance agent, whose duty was to the insurance company, unlike the insurance broker in this case, whose duty was to the potential insured. Thus, this case presents an even stronger argument for holding the insurance broker liable for negligent failure to procure the type of insurance requested. In *A.G. Edwards,* the court found the insurance broker breached an oral agreement between the parties by giving an inaccurate quotation and not telling the potential insured the policy did not have all of the coverage it had contemplated, although the potential insured had accepted the policy, the court still found the insurance broker was liable for breach of contract and for breach of its fiduciary duty. In this case, as noted above, Bormann redirected Doug Hartmann after unilaterally determining what he was really asking for, but there is no evidence that Doug Hartmann agreed with Bormann's interpretation of what kind of policy he needed. As noted above, a broker has no duty to advise an insured about what insurance he needs unless the broker specifically undertakes to do so. In effect, Bormann undertook to tell Doug Hartmann what kind of coverage he really wanted when Doug Hartmann told Bormann he needed "athletic participant's coverage." The record makes clear that Bormann's interpretation of what Doug Hartmann requested was not consistent with what Doug Hartmann requested and thought he was getting.

The Regal and Liberty Mutual also contend there were no other independent bases on which the trial court could have granted summary judgment on counts II and XI of the petition. In particular, they maintain Hartmann, L.L.C.'s acceptance of the specimen copy he received from Bormann did not signify acceptance of a counteroffer policy. Bormann and Chapman–Sander argue, relying on *Jenkad Enterprises, Inc. v. Transportation Ins., Co.,* 18 S.W.3d 34, 39 (Mo.App. E.D.2000), that when Hartmann, L.L.C. and the Regal accepted the specimen copy, they were, in effect, agreeing to the terms of the policy, which did not include athletic participants' coverage. In *Jenkad Enterprises, Inc.,* the court found if an insured accepts a policy as a counteroffer to its application, it assents to the policy's terms and cannot thereafter seek to have the policy reformed on the ground of mutual mistake. *Id.* However, this case is distinguishable from *Jenkad Enterprises, Inc.* because here Bormann was acting as an independent insurance broker and was thus an agent of Hartmann, L.L.C., not of the insurance company, and, as such, did not have the authority to make a counteroffer. *See Hall,* 447 S.W.2d at 9. In *Jenkad Enterprises, Inc.,* the court was dealing with an agent of an insurance company, not an independent broker; thus, the duty was to the insurance company, not the insured. *Id.* at 36. Chapman–Sander and Bormann contend that *Emerson Electric* demonstrates an insurance broker can have dual agency, that is, the broker can be the agent of the insured for some purposes and the agent of the insurer for some purposes. While that is no doubt a true statement of law, there is no evidence in the record to show that was the type of

agency in this case. *Emerson Electric*, 362 S.W.3d at 16. Here, there is a genuine dispute of material fact regarding whether Bormann and Chapman–Sander either procured the insurance requested or informed Hartmann, L.L.C. the delivered policy was not the one requested. As a result, a grant of summary judgment on the basis that Hartmann, L.L.C. and the Regal accepted the specimen copy would not have been proper because it was Bormann and Chapman–Sander's duty to procure the coverage requested.

■ Bormann and Chapman–Sander also argue there was another independent ground on which to base an entry of summary judgment. In particular, they argue they did not cause the Regal and Liberty Mutual's damages because no policy exists that could have provided the Regal and Liberty Mutual with athletic participants' coverage. Essentially, Bormann and Chapman–Sander contend they cannot be liable for failing to procure something that does not exist. However, Hartmann, L.L.C. created a genuine issue of fact on this issue by having its expert, Richard Mintzer, testify that coverage for the boxers was available if Bormann had looked for it properly. Bormann and Chapman–Sander contend David Merrill testified he did "not know of any" commercial general liability policies to cover boxing matches which would include coverage for liabilities arising from injuries to the participant boxer, and would not include an athletic participants' exclusion. However, this testimony only deals with the question of whether there is a policy without such an exclusion. It does not deal with the question of whether the type of coverage Hartmann sought was available generally. Thus, Bormann and Chapman–Sander are not entitled to summary judgment on this basis.

Therefore, we find the trial court erred in granting summary judgment in favor of Chapman–Sander and Bormann on counts II and XI of the petition because there was a genuine issue of material fact regarding whether Chapman–Sander and Bormann fully performed their duties under the contract with Hartmann, L.L.C. Point granted.

Although we are granting relief on the Regal and Liberty Mutual's first point, we will also address their second point because of the similar issues involved. In their second point, the Regal and Liberty Mutual argue the trial court erred in granting summary judgment in favor of Chapman–Sander and Bormann on counts III and IX of the petition because there was a genuine issue of material fact regarding whether the Regal and Liberty Mutual could prove a breach of duty in negligence in that the record contained evidence from which a reasonable jury could have concluded that Hartmann requested insurance coverage for injuries to boxers and that Chapman–Sander and Bormann failed to procure such coverage. We agree.

■ Missouri courts have long held that a broker or agent who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance. *Busey Truck Equipment, Inc.*, 299 S.W.3d at 738. An agent or broker who unjustifiably and through his fault or neglect fails to obtain the requested insurance will be held liable for any damages resulting from such failure. *Id.*

The Regal and Liberty Mutual contend the trial court's ruling on the negligence claim explicitly states it was based on the trial court's belief that Doug Hartmann never asked Bormann to provide an insurance policy that provided coverage for

claims arising out of injuries to boxers. The Regal and Liberty Mutual maintain Doug Hartmann asked Bormann for "athletic participants' coverage." The Regal and Liberty Mutual argue that because there was no dispute that the Legion insurance policy excluded coverage for the Maldonado loss, the trial court could only find for Chapman–Sander and Bormann on summary judgment if it concluded Doug Hartmann never requested insurance coverage for claims arising out of injuries to boxers.

The trial court found:

the uncontroverted facts are clear that [Doug] Hartmann never requested that Bormann provide additional insurance after he wrote the liability policy for Hartmann [L.L.C.]. [Doug] Hartmann knew that the policy as written excluded injuries to athletic participants. In fact, Bormann directed [Doug] Hartmann to a different insurer to obtain accident coverage for the fight participants. The [Regal], likewise, never requested that Bormann provide accident coverage.... The Court finds that [the Regal] will not be able to show that [Chapman–Sander and Bormann] breached a duty to them, and [Chapman–Sander and Bormann] are therefore entitled to summary judgment on Counts III and IX.

As noted above, Bormann testified the day after the Regal received the specimen copy, November 20, 1998, Doug Hartmann "called [him] back and said that he needed what he called athletic participant's coverage." Bormann also testified Doug Hartmann later told him he had purchased liability coverage on his own from someone else. However, the record does not show Doug Hartmann ever told Bormann that he no longer needed athletic participants' coverage. Moreover, Doug Hartmann testified it was always his understanding that the coverage he was getting from Bor-

mann and Chapman–Sander would cover an injury to a participant in a boxing match.

As a result, Bormann's testimony that Doug Hartmann requested athletic participants' coverage creates a genuine issue of material fact regarding what type of coverage Doug Hartmann requested from Bormann and whether Bormann and Chapman–Sander negligently failed to procure that coverage. On these matters, the trial court resolved disputed issues of fact contrary to the rules of summary judgment.

Further, as with the Regal and Liberty Mutual's first point, there was no independent basis on which the trial court could have granted summary judgment on this point because: (1) it was Bormann and Chapman–Sander's duty as independent insurance brokers in this case to procure the coverage requested by Hartmann, L.L.C. and Hartmann, L.L.C. and the Regal's acceptance of the specimen copy did not relieve Bormann and Chapman Sander of this duty under the circumstances of this case; and (2) Hartmann, L.L.C. created a genuine issue of fact on the issue of whether there existed a type of insurance policy that would have covered injuries to the boxers by having its expert, Richard Mintzer, testify that coverage for the boxers was available if Bormann had looked for it properly.

Therefore, the trial court erred in granting summary judgment in favor of Chapman–Sander and Bormann on counts III and IX of the petition because there was a genuine issue of material fact regarding whether the Regal and Liberty Mutual could prove a breach of duty in negligence. Point granted.

The trial court's grant of summary judgment in favor of Chapman–Sander and

Bormann is reversed and remanded for proceedings consistent with this opinion.

MARY K. HOFF, J. and SHERRI B. SULLIVAN, J., concur.