Iretta MORGAN, Appellant,

v.

SAINT LUKE'S HOSPITAL OF KANSAS CITY, Respondent.

No. WD 75098.

Missouri Court of Appeals,
Western District.

June 28, 2013.

Mitchell L. Burgess, Kansas City, for Appellant.

Thomas W. Wagstaff, Kansas City, for Respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge, and CYNTHIA L. MARTIN, Judge.

VICTOR C. HOWARD, Judge.

Iretta Morgan, appeals the ruling of the trial court granting judgment on the pleadings to St. Luke's Hospital of Kansas City ("St. Luke's"). She contends that the trial court erroneously found that her pleading against St. Luke's for violation of the Missouri Merchandising Practices Act ("MMPA"), tortious interference with contract/business relationship, and unjust enrichment failed to state claims upon which relief could be granted. The judgment is reversed and the case remanded for further proceedings in accordance with this opinion.

First, Ms. Morgan contends that the pleading alleged that St. Luke's refusal to submit her bills to health insurance constituted an unfair business practice in violation of the MMPA. Ms. Morgan asserts that St. Luke's refusal to submit Morgan's bills to her health insurance ignored its contractual obligations with her insurer to accept a discounted amount and thereby denied Ms. Morgan the benefits of her health insurance, also resulting in a financial windfall to St. Luke's. Second, Ms. Morgan argues that the pleading alleged each element of tortious interference, including an absence of justification for St. Luke's actions. She contends that St. Luke's action was not justified because it had no unqualified legal right to ignore contractual obligations with Ms. Morgan's insurer that are designed to benefit the insured. Third, Ms. Morgan asserts that the pleading alleged each element of unjust enrichment, including that St. Luke's received a benefit to which it was not

entitled. She argues that St. Luke's violated the terms of its contract with her health insurer that was in place for the benefit of the insured, and in doing so procured a financial benefit to the financial detriment of the insured.

## FACTS

On March 18, 2009, Ms. Morgan sought treatment at St. Luke's for injuries sustained in a motor vehicle accident with a third party. Her total bill for such treatment was $11,452.75. St. Luke's first submitted its bill to Ms. Morgan's health insurance and received payment from that insurance for such bill, all pursuant to the agreement between Ms. Morgan's health insurance and St. Luke's. This same agreement entitled Ms. Morgan to a contractual reduction in the amount of her medical bills incurred with St. Luke's. Then St. Luke's returned the funds received from the health insurance company and instead filed a lien against any recovery in Ms. Morgan's third party tort claim against the other driver in the accident. The lien was for the total amount of services rendered, without a reduction.

Ms. Morgan filed a class action on behalf of herself and those similarly situated, the petition alleging in three counts that the above-described actions of St. Luke's violated the MMPA, tortiously interfered with her contract with her health insurance provider, and unjustly enriched St. Luke's. St. Luke's subsequently filed a motion for judgment on the pleadings, alleging that Ms. Morgan's petition should be dismissed based on issue preclusion or failure to plead claims upon which relief could be granted.

The trial court ruled that the doctrine of issue preclusion did not apply, but granted judgment to St. Luke's on all three counts of Ms. Morgan's petition based on failure

to state claims upon which relief could be granted. The trial court's conclusion was based on its findings that (1) the actions of St. Luke's did not constitute an unfair practice in violation of the MMPA because section 430.230 [1] allowed St. Luke's to file a lien on patients' claims for personal injury, (2) there was no absence of justification for the actions of St. Luke's because such actions were within its legal right under section 430.230, and (3) Ms. Morgan did not plead facts sufficient to show it would be unjust for St. Luke's to retain the benefit of the full amount billed for medical services rendered. This appeal by Ms. Morgan followed.

## ANALYSIS

At issue in this appeal is whether section 430.230 allows a healthcare provider to file a lien on a patient's claim against a third-party tortfeasor despite (1) the existence of a health insurance contract between the provider and the patient's health insurance company providing for a discount in the amount of the patient's medical bills, and (2) the payment of the discounted amount from the insurer to the provider.

### Standard of Review

Review of a grant of a motion for judgment on the pleadings requires this Court to decide "whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12 (Mo. banc 2012) (internal quotations omitted). For purposes of the motion, the well-pleaded facts pleaded by the nonmoving party are treated as admitted. *Id.* The trial court's grant of judgment on the pleadings will be affirmed only if review of the totality of the facts pleaded by the petitioner and the benefit of all reasonable inferences drawn

therefrom reveals that petitioner could not prevail under any legal theory. *Id.*

### Hospital Lien Statute and Hospital Billing Practices For Insured Patients Injured By Third Party Tortfeasors

■ The significance of Missouri's hospital lien statute, section 430.230, is of foremost importance in resolving the issues in this appeal. The trial court's dismissal of Ms. Morgan's claims on the pleadings for her first two causes of action, violation of the MMPA and tortious interference with a contract/business relationship, hinged on its interpretation of section 430.230. Specifically, the trial court found that section gave St. Luke's the *unlimited* right to file a lien for the full cost of services rendered to insured patients upon those patients' claims against third-party tortfeasors who caused their injuries treated by St. Luke's.

Additionally, while the court's dismissal of Ms. Morgan's unjust enrichment claim does not explicitly refer to section 430.230, it is implicit that the court found it was not unjust to allow St. Luke's to retain the benefit of the lien for the full cost of services because something excused St. Luke's from charging only the contractually obligated discounted amount alleged in Ms. Morgan's petition. No other justification for disregarding its contractual obligations besides the right to assert a lien provided by section 430.230 was raised by St. Luke's or the trial court.

Section 430.230 provides, in relevant part, that

> [e]very public hospital or clinic, and every privately maintained hospital, clinic or other institution for the care of the sick, which is supported in whole or in part by charity, located within the state

1. All statutory references herein are to RSMo Cum.Supp.2011 unless otherwise noted.

of Missouri, or any such hospital duly incorporated under the laws of Missouri providing for the incorporation of eleemosynary institutions, shall have a lien upon any and all claims, counterclaims, demands, suits, or rights of action of any person admitted to any hospital, clinic or other institution and receiving treatment, care or maintenance therein for any cause including any personal injury sustained by such person as the result of the negligence or wrongful act of another, which such injured person may have, assert or maintain against the person or persons causing such injury for damages on account of such injury, for the cost of such services, computed at reasonable rates not to exceed twenty-five dollars per day and the reasonable cost of necessary X-ray, laboratory, operating room and medication service, as such hospital, clinic, or other institution shall render such injured person on account of his conditions[.][2]

Section 430.230 is designed with the dual purpose of ensuring that injured patients are promptly treated without consideration of their ability to pay and financially protecting health care providers to enable them to continue to provide care. *Kelly v. Marvin's Midtown Chiropractic, LLC*, 351 S.W.3d 833, 835 (Mo.App. W.D.2011).

This question is one of first impression in Missouri. Courts in other states with hospital lien statutes have considered this issue under various factual circumstances, and most courts generally hold that a healthcare provider covered under the hospital lien statute may not assert a lien against the claim of a patient with health insurance for an amount beyond what the contract between the provider and the health insurance company dictates.[3] The focus of courts so holding is on the exis-

---

**2.** The parties and the court refer variously to section 430.230 and section 430.235; however, for the purposes of this opinion, the relevant language of each section is the same.

**3.** See *Dorr v. Sacred Heart Hosp.*, 228 Wis.2d 425, 597 N.W.2d 462, 467 (App.1999) (holding that because the contract between the hospital and the health insurance company had a hold harmless provision which stated the hospital would not bill or hold insurance subscribers liable for any hospital expenses covered by the subscriber's insurance contract, and all expenses from the patient's treatment for the automobile accident were covered in such contract, there was no debt upon which the hospital could assert a lien pursuant to the state's hospital lien statute); *Midwest Neurosurgery, P.C. v. State Farm Ins. Cos.*, 268 Neb. 642, 686 N.W.2d 572, 577, 579 (2004) (holding that under Nebraska's physician's lien statute a physician's lien could not "exceed the amount the health care provider agreed to accept for the services rendered to a patient, even if the usual and customary charge for such services is greater than that sum," because the statute extends such lien only to the "amount due," or debt of the patient to the hospital); *Parnell v. Adventist Health System/West*, 35 Cal.4th 595, 26 Cal. Rptr.3d 569, 109 P.3d 69, 71 (2005) (holding that, where hospital used "balance billing," that since the hospital had already received payments from the patient and his health insurer, and had agreed to accept that amount as "payment in full" for its services, there was no longer any amount owing to the hospital, and thus it could not assert a statutory hospital lien for the difference between its charges and the amount received, in light of the negotiated network agreements); *Satsky v. U.S.*, 993 F.Supp. 1027, 1028–29 (S.D.Tex.1998) (holding that where hospital used "balance billing," its lien was unenforceable because the hospital had been paid in full for the services it provided to patient, and there was consequently no debt to secure by the existence of the lien); *Wright v. First Nat'l Bank in Albuquerque*, 123 N.M. 417, 941 P.2d 498, 500–01 (1997) (holding that a hospital may not assert a statutory lien in an amount exceeding the amount it agreed to accept from the patient's insurer); *Lopez v. Morley*, 352 Ill.App.3d 1174, 288 Ill.Dec. 234, 817 N.E.2d 592, 599 (2 Dist.2004) (holding that the hospital's "lien cover[ed] only the amounts of the debt owed").

tence of an underlying debt being necessary to support a lien, leading them to reason that a provider is not entitled to file a lien under the hospital lien statute when the patient's obligation to the provider has been satisfied by the payment made by her health insurer. *E.g., Wright,* 941 P.2d at 500. The court in *Dorr,* for example, focused on the plain meaning of the word "lien" itself, reasoning that it indicates that the existence of a debt is required for a lien to exist. *Dorr,* 597 N.W.2d at 469–70.

In *West v. Shelby County Healthcare Corp.,* the Tennessee Court of Appeals concluded that, under Tennessee's healthcare lien act, "the underlying debt to which the lien attaches is an obligation owed by the person receiving medical services from the hospital[,]" rather than an obligation owed by the tortfeasor or the tortfeasor's insurer. 2013 WL 500777, *13 (Tenn.Ct. App.2013). The *West* court's stance was that language in the agreement between the provider and insurer that attempted to reserve the provider a right to collect "appropriate amount(s) due ... from a third party that might have legal responsibility for the services rendered[,]" in spite of the same agreement's hold harmless provision, was ineffective because the healthcare lien act "[did] not give the hospital an independent cause of action against the third party tortfeasor." *Id.* at *6, *13.

One court considering situations similar to those before this court has come to the opposite conclusion. *Rogalla v. Christie Clinic, P.C.* relied on language in the agreement between the provider and the insurer to conclude that the clinic "reserve[d] [its] statutory right to seek relief from third-party tortfeasors" by "subro-gat[ing]" the claims of plaintiff." 341 Ill. App.3d 410, 276 Ill.Dec. 489, 794 N.E.2d 384, 392 (4 Dist.2003). The court then held that a hospital's statutory lien was not based on the patient's debt to the healthcare provider, but rather on the debt of the third-party tortfeasor to the patient and the provider. *Id.* We decline to adopt this approach.

Ms. Morgan's claims were dismissed in a judgment on the pleadings, before she had an opportunity to conduct discovery and examine the terms of the agreement between St. Luke's and her health insurance company. The trial court concluded that because section 430.230 allows St. Luke's, "without limitation," to file a lien on claims for personal injury treated at St. Luke's and caused by third-party tortfeasors, Ms. Morgan could not possibly prevail as a matter of law on any of the claims alleged in her petition. First, however, although this right is not expressly limited within the language of the statute, it is axiomatic that "a lien cannot exist in the absence of [a] debt, the payment of which it secures." *Dean Realty Co. v. City of Kansas City,* 85 S.W.3d 83, 89 (Mo.App. W.D.2002) (citing *Jackson v. Engert,* 453 S.W.2d 615, 617 (Mo.App.1970)). Secondly, even if section 430.230 gives St. Luke's the right to a lien on such claims, its right, like any other legal right, can be modified or waived by contract. *See Coffer v. Wasson–Hunt,* 281 S.W.3d 308, 312 (Mo. banc 2009) ("As with any other statutory right, an officer can waive his or her right to appear before the board.") (internal citations omitted).

■ Treating Ms. Morgan's well-pleaded facts as admitted,[4] there is a contract

---

4. The brief of St. Luke's gives great importance to the inadequacy of Ms. Morgan's pleadings regarding the particular terms of its provider agreement with her health insurer. Clearly, however, Ms. Morgan has had no access to such agreement, so this importance is unwarranted. Ms. Morgan's petition does allege that she was entitled to have her claims submitted to her health insurance for payment and that St. Luke's had a contract with

between St. Luke's and her health insurance provider that operates to compel the participation of St. Luke's in accepting discounted payments from Ms. Morgan's health insurance provider that serve to extinguish the underlying patient account, i.e. the debt. As such, we simply hold that, according to the pleadings here, Ms. Morgan's debt has been extinguished.[5] A lien cannot exist in the absence of a debt, and thus Ms. Morgan's pleadings have stated a cause of action so as to survive a motion for judgment on the pleadings. Therefore, the case is remanded for further proceedings as the trial court deems appropriate in light of this opinion.

All concur.

her insurer under which it was entitled to a reduced compensation for the healthcare services it provided to her. A reasonable implication of these allegations is that St. Luke's was required to submit Ms. Morgan's claim to her health insurance and was required to accept the reduced compensation in full satisfaction of the costs of the services provided to her. Thus, Ms. Morgan's essential claim is sufficient to constitute well-pleaded allegations that the existing contract between St. Luke's and her health insurance prohibit St. Luke's from doing what it has done, and thus is sufficient to overcome dismissal on all three of the theories she pled.

5. Although Ms. Morgan pled this *case* as a putative class action, the trial court did not rule on any issue concerning the certification of a class. Similarly, this Court does not express any views on class treatment of Ms. Morgan's case.