

# IN THE MISSOURI COURT OF APPEALS

# WESTERN DISTRICT

TRENT BERHOW,                )
                                    )

                   Appellant,   )    **WD86333**

v.                              )

                                    )    **OPINION FILED:**

                                    )    **September 3, 2024**

                                    )

STATE OF MISSOURI,          )

                                    )

                   Respondent.   )

**Appeal from the Circuit Court of DeKalb County, Missouri**
**The Honorable Ryan W. Horsman, Judge**

**Before Division Two:** Thomas N. Chapman, Presiding Judge,
Karen King Mitchell and W. Douglas Thomson, Judges

Trent Berhow appeals from a judgment on the pleadings in favor of the State of

Missouri in his negligence action alleging injuries from a dangerous condition at the

Western Missouri Correctional Center (WMCC) where he was part of an inmate work

crew performing electrical and maintenance work. The State moved for judgment on the

pleadings on two grounds—sovereign immunity and statute of limitations. The circuit

court granted judgment on the pleadings for the State.

Berhow raises three points on appeal. For his first two points, he asserts the circuit court erred in granting judgment on the pleadings because (1) the State waived sovereign immunity for negligent acts or omissions where injury results from the dangerous condition of the State's property (Point I) and (2) the one-year statute of limitations does not apply to bar Berhow's claim against the State (Point II). For his Point III, Berhow argues the court erred in denying his motion for sanctions because the court abused its discretion by not sanctioning the State for failing to cooperate in discovery matters. We affirm in part and reverse in part.

**Background[1]**

On June 19, 2019, Berhow sued the Missouri Department of Corrections (DOC) for injuries he suffered when he fell off a ladder at WMCC. DOC moved to dismiss Berhow's petition as untimely under § 516.145,[2] prompting Berhow to file a motion for leave to amend his petition to dismiss DOC without prejudice and add the State as a party. Thereafter, Berhow and the State filed a joint stipulation and consent to ruling requesting leave for Berhow to file an amended petition dismissing DOC and adding the

---

[1] Because Berhow "appeals from the grant of judgment on the pleadings, the underlying facts are derived from his petition [only, and] we assume those facts to be true for purposes of our review." *Bernhardt v. McCarthy for Bd. of Prob. & Parole*, 467 S.W.3d 348, 349 n.1 (Mo. App. W.D. 2015).

[2] Section 516.145 provides that "all actions brought by an offender . . . against the department of corrections or any entity or division thereof" must be brought within one year. The underlying injury occurred on July 20, 2017, more than a year before Berhow filed his petition. All statutory references are to the Revised Statutes of Missouri (Supp. 2018).

2

State as the sole defendant.  The court granted the requested relief, and Berhow filed his amended petition, which the State answered.

The amended petition alleged that, on July 20, 2017, Berhow was assigned to retrofit four-foot fluorescent lights in a hallway at WMCC, which the State owns and operates.  Berhow was instructed to place a ten-foot ladder in an allegedly precarious position under one of the lights.  When Berhow complained to his supervisor (Supervisor) about the placement of the ladder, Supervisor ordered Berhow to perform the work anyway.  While standing at the top of the ladder stripping a wire, Berhow lost his balance and fell approximately eight feet to the concrete floor.  He suffered injuries to his left arm, elbow, and wrist as well as his hips, pelvis, and back.

On February 28, 2022, the State moved for judgment on the pleadings, arguing that it was entitled to judgment on the pleadings as a matter of law because Berhow's amended petition was time-barred, failed to state a claim, and failed to show exhaustion of administrative remedies.  That same day, Berhow filed a motion to compel discovery responses, requesting sanctions should the State fail to comply.  After hearing arguments on the motions, the court denied the State's motion for judgment on the pleadings and sustained Berhow's motion to compel, ordering the State to respond to outstanding discovery requests by July 1, 2022.  The State provided a partial response on October 24, 2022.  On February 3, 2023, Berhow filed an amended motion to strike the State's pleadings for failure to respond to discovery requests (Berhow's amended motion for sanctions).  Three days later, the State produced fifty-two pages of additional documents.

3

On March 16, 2023, the State filed a renewed motion for judgment on the pleadings, arguing that the State is not a "public entity" and, thus, did not waive sovereign immunity for Berhow's claim and, alternatively, if the State did waive sovereign immunity, the one-year statute of limitations in § 516.145 applied and barred Berhow's claim. Four days later, the court ordered the State "to review and produce all DOC documents responsive [to Berhow's] requests by close of business, March 24, 2023." The State complied, producing 450 additional pages of documents.

On April 11, 2023, the court heard arguments on the State's renewed motion for judgment on the pleadings and Berhow's amended motion for sanctions, taking both motions under advisement. On May 17, 2023, the court granted the State's motion for judgment on the pleadings without further explanation. The court did not rule on Berhow's amended motion for sanctions.[3] This appeal follows.

**Argument**

On appeal, Berhow asserts the circuit court erred in granting judgment on the pleadings because the State was not entitled to judgment as a matter of law based on (1) sovereign immunity (Point I) or (2) statute of limitations (Point II). Berhow also argues the court erred in denying his motion for sanctions because the court abused its discretion by not sanctioning the State for failing to cooperate in discovery matters (Point III). We discuss Berhow's points in order but consolidate Points I and II for ease of discussion.

---

[3] "The trial court's failure to rule on the motion for sanctions constitute[s] a denial of the motion." *Ruzicka v. Hart Printing Co.*, 21 S.W.3d 67, 73 (Mo. App. E.D. 2000).

4

**I.     In light of the procedural posture of this case, the circuit court erred in granting the State's motion for judgment on the pleadings.**

Berhow's first two points allege error in granting the State's renewed motion for judgment on the pleadings. "We review a court's grant of judgment on the pleadings de novo." *Blackwood, Langworthy & Tyson, LLC v. Knipp*, 571 S.W.3d 108, 114 (Mo. App. W.D. 2019). In doing so, we "decide whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Id.* (quoting *Morgan v. Saint Luke's Hosp. of Kan. City*, 403 S.W.3d 115, 117 (Mo. App. W.D. 2013)). We treat the nonmovant's well-pleaded facts as admitted, and we affirm the judgment "only if review of the totality of the facts pleaded by the petitioner and the benefit of all reasonable inferences drawn therefrom reveals that petitioner could not prevail under any legal theory." *Id.* (quoting *Morgan*, 403 S.W.3d at 117). "When reviewing the grant of a motion for judgment on the pleadings, [we] consider[] solely whether the grounds raised in the motion supported dismissal." *Olofson v. Olofson*, 625 S.W.3d 419, 428 (Mo. banc 2021) (quoting *City of Lake St. Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010)).

The State's renewed motion for judgment on the pleadings asserted two grounds: (1) § 537.600 waives sovereign immunity for DOC but not the State, so the State's immunity remains intact; and, in the alternative, (2) even if Berhow could bring an action

5

against the State, Berhow's action was barred by the one-year limitations period in § 516.145.[4]

Generally, sovereign immunity protects the State from lawsuits. § 537.600.1; *Cain v. Mo. Highways & Transp. Comm'n*, 239 S.W.3d 590, 593 (Mo. banc 2007). Section 537.600.1 sets out two exceptions, and Berhow brings his claim against the State under the second exception (the dangerous condition exception), which waives a public entity's sovereign immunity for "[i]njuries caused by the condition of [the] public entity's property if the plaintiff establishes the following elements:"

(1) The property was in [a] dangerous condition at the time of the injury,
(2) The injury directly resulted from the dangerous condition,
(3) The dangerous condition created a reasonably foreseeable risk of harm of the kind of injury that was incurred, and
(4) Either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to injury to have taken measures to protect against the dangerous condition.

*Cain*, 239 S.W.3d at 593 (citing § 537.600.1(2)). Thus, the dangerous condition exception waives a *public entity's* sovereign immunity for injuries caused by the condition of the *public entity's property* when the remaining conditions of § 537.600.1(2) are met. To determine whether the exception applies in this case, we must first determine

_____

[4] Among the arguments in its initial motion for judgment on the pleadings, the State asserted that Berhow's amended petition failed to state a claim because the petition, taken at face value, did not allege, among other things, the existence of a "dangerous condition" as that term has been interpreted by Missouri courts. Because the State did not include that argument in its renewed motion, which is the motion at issue in this appeal, we do not reach that argument. *See Olofson v. Olofson*, 625 S.W.3d 419, 428 (Mo. banc 2021) (limiting our review to grounds raised in the motion for judgment on the pleadings).

6

whether the State is a "public entity" and, if it is, whether the property involved is the state's property.

    A. <u>Is the State a "public entity" for purposes of § 537.600.1(2)?</u>

Our "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579, 583 (Mo. banc 2012) (quoting *Parktown Imps., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "[I]f the intent of the legislature is clear and unambiguous, by giving the language used in the statutes its plain and ordinary meaning, then [we are] bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Id.* (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011), *abrogated on other grounds*, *Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, 785 (Mo. banc 2023)).

"In the absence of statutory definitions, the plain and ordinary meaning of a term may be derived from a dictionary . . . ." *Dubuc v. Treasurer of Mo.*, 659 S.W.3d 596, 603 (Mo. banc 2023) (quoting *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 583 (Mo. banc 2023)). The term "public entity" is not defined by statute, so we look to the dictionary to determine its meaning. "'Public' means 'authorized or administered by or acting for the people as a political entity: government.'" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 917 (Mo. banc 2016) (quoting *Webster's Third New International Dictionary* at 1836 (3d ed. 1993)). "Entity" means "something that has [a] separate and distinct existence and objective or conceptual reality . . . an organization (such as a business or government unit) that has an identity separate

7

from those of its members." *Entity*, Merriam-Webster Online Dictionary, (last visited July 19, 2024). Based on the dictionary definitions of "public" and "entity," it would appear that the State is a public entity.

The State argues that we should construe the phrase "public entity" as used in § 537.600.1(2) to exclude the State because, elsewhere in Chapter 537, the terms "the state" and "public entities" are used separately, thus demonstrating that the legislature considered "public entities" to be separate from the State. *See, e.g.*, § 537.610.2 ("liability of the state and its public entities"); § 537.615 (same). The State reasons that, had the legislature intended the State to have waived its sovereign immunity in § 537.600.1(2), the legislature would have used the phrase "the state and its public entities" as it did elsewhere in Chapter 537. As a corollary, the State notes that, if the term "public entity" includes the State, then the legislature's use of the phrase "the state and its public entities" elsewhere in the same chapter would be superfluous, a reading we should not adopt. *See State ex rel. Goldsworth v. Kanatzar*, 543 S.W.3d 582, 586 (Mo. banc 2018) ("The legislature will not be presumed to have inserted idle verbiage or superfluous language in a statute.") (quoting *Civil Serv. Comm'n of the City of St. Louis v. Members of Bd. of the Aldermen of the City of St. Louis*, 92 S.W.3d 785, 788 (Mo. banc 2003)). But the definitions of the terms "public" and "entity" are clear and, "[w]hen the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Moore v. Bi-State Dev. Agency*, 609 S.W.3d 693, 696 (Mo. banc 2020) (quoting *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013)). Thus, we do not find the State's argument persuasive. We also note that the State has been a defendant in many

dangerous-condition cases and, in those cases, the State assumed it was a public entity and challenged application of the dangerous-condition exception on other grounds.[5]

B. Was the property at issue the State's property?

Section 537.600.1(2) waives sovereign immunity under certain circumstances for "[i]njuries caused by the condition of *a public entity's property*." Berhow's amended petition alleged that the State *owns and operates* WMCC. In its answer to the amended petition, the State admitted that it operates WMCC through its agency, DOC, but denied that the State owns the facility. The State argues that the sovereign immunity waiver for a dangerous condition of a public entity's property does not apply to the State here because (1) the State does not own WMCC, and (2) even if it did, DOC possesses and controls WMCC.

As to the issue of ownership, Berhow's amended petition alleged that the State owns WMCC. "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion [for judgment on the pleadings.]" *Gross v. Parson*, 624 S.W.3d 877, 883 (Mo. banc 2021) (quoting *Emerson Elec. Co. v. Marsh & McClennan Cos.*, 362 S.W.3d 7, 12 (Mo. banc 2012)). We will not, however, "blindly

---

[5] According to the court in *Warren v. State*, the State acknowledged, "Section 537.600 expressly waives the State's sovereign immunity where injuries result from a dangerous condition of public property[,]" but the State argued that the plaintiff in that case had failed to adequately allege his injuries were the direct result of a dangerous condition (a table saw missing a safety guard). 939 S.W.2d 950, 956-57 (Mo. App. W.D. 1997). We rejected the State's argument concerning the cause of the inmate's injuries. *Id.* at 957.

accept the legal conclusions drawn by the pleaders from the facts." *Id.* (quoting *Ocello v. Koster*, 354 S.W.3d 187, 197 (Mo. banc 2011)).

The State argues that, under § 37.005.9, the governor holds legal title to properties, including WMCC, and thus, as a matter of law, the State does not own the property at issue. Section 37.005.9 states, "the fee title to *all real property now owned or hereafter acquired by the state of Missouri*, or any department, division, commission, board or agency of state government . . . shall . . . vest in the governor." (Emphasis added). While under this statute, title may vest in the governor, we do not interpret this statute to mean that property acquired by the State is not *owned* by the State. Thus, we cannot conclude that, as a matter of law, the State does not own the property; therefore, we must accept, for purposes of the current appeal, the allegation in the petition that WMCC is State property.

Next, the State argues that WMCC is not "[its] property" for purposes of § 537.600.1(2) because the phrase "a public entity's property" is singular, indicating that sovereign immunity is waived only as to one entity. If ownership of the property is held by one entity and another entity possesses and controls the property, the State suggests that immunity is waived only as to one of those two entities—specifically the one with possession and control.

Possession and control of property are relevant to the meaning of the phrase "a public entity's property" in § 537.600. If a "public entity does not own the property at issue, the inquiry must focus on whether the public entity had possession and control over the property equal to the possession and control of a property owner." *Allen v. 32ⁿᵈ Jud.*

10

*Cir.*, 638 S.W.3d 880, 891 (Mo. banc 2022). "The plain meaning of the phrase 'public entity's property' in section 537.600.1(2) encompasses both actual legal ownership and a functionally equivalent degree of possession and control." *Id.* Thus, "when the public entity does not own the property, it must have 'exclusive possession and control' over it for section 537.600.1(2) to apply." *Id*. at 892. Therefore, it is possible that, if the State owns WMCC and DOC possesses and controls WMCC, WMCC is the property of more than one public entity, which would present the issue the State sought to raise on appeal— whether § 537.600.1(2) waives immunity for more than one entity. At this point in the litigation, however, we cannot address that question because we have to assume the well-pleaded facts in the petition are true, and Berhow alleges the State both owns and *operates* the property at issue. The term "operates" is broad enough to include the concepts of possession and control.

For the foregoing reasons, we find that, to the extent the circuit court granted the State's motion for judgment on the pleadings on the basis of the State's blanket sovereign immunity defense, the circuit court erred. Point I is granted.

The State also moved for judgment on the pleadings on the basis of the one-year statute of limitations in § 516.145. But the express language of that section limits it to actions "brought by an offender . . . against the department of corrections or any entity or division thereof." Berhow dismissed DOC as a defendant and, instead, brought his claim against the State only. The State is not DOC "or any entity or division thereof." Thus, the limitations period in § 516.145 does not apply to Berhow's claim against the State.

11

To the extent the circuit court granted the State's motion for judgment on the pleadings on the basis of § 516.145, the circuit court erred. Point II is granted.

## II. The circuit court did not abuse its discretion in denying Berhow's amended motion for sanctions.

For his final point, Berhow contends that the circuit court erred in denying his amended motion for sanctions because the court abused its discretion by not sanctioning the State for failing to cooperate in discovery matters.[6]

"The circuit court is vested with broad discretion in administering the rules of discovery and in determining the proper remedy—including sanctions—for a party's non-compliance with the rules of discovery." *Noble v. L.D. Enters., Inc.*, 687 S.W.3d 11, 17 (Mo. App. W.D. 2024) (quoting *Washington v. Sioux Chief Mfg. Co.*, 662 S.W.3d 60, 67 (Mo. App. W.D. 2022), *abrogated on other grounds by Steele v. Johnson Controls, Inc.*, 688 S.W.3d 192, 196 n.3 (Mo. banc 2024)). "Our review is limited to determining whether the circuit court could have reasonably concluded as it did, not whether we would have [reached the same decision] under the same circumstances." *Id.* (quoting *Washington*, 662 S.W.3d at 67). "[W]e will not disturb the circuit court's [decision regarding] discovery sanctions unless we find the court abused its discretion." *Id.*

---

[6] Berhow's argument (in his brief and at oral argument) is rife with invective impugning the State's integrity in responding to discovery (in this matter and generally), and complaining of the disparate response of the circuit court in entirely unrelated matters. We find these types of attacks unhelpful and unprofessional. Further, Berhow never explains how the delay in the State's discovery responses prejudiced the outcome in this matter. He never explains what discovery requests (if any) he made that remained unanswered, and how those answers might have affected the court's decision to grant judgment on the pleadings.

(quoting *Washington*, 662 S.W.3d at 67).  A court "abuses its discretion when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration."  *Id.* (quoting *Clark v. Shaffer*, 662 S.W.3d 137, 142 (Mo. App. W.D. 2023)).  "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that [it] abused its discretion."  *Id.* (quoting *Hale v. Cottrell, Inc.*, 456 S.W.3d 481, 488 (Mo. App. W.D. 2014)).

It is clear from the record that the State did not respond to Berhow's discovery requests in a timely manner.  While we do not condone the State's conduct in this case, the circuit court reviewed extensive submissions and held four hearings on the State's discovery responses and concluded that sanctions were not warranted.  On this record, we find the court's denial of Berhow's amended motion reasonable.

Point III is denied.

**Conclusion**

The circuit court erred in granting the State's motion for judgment on the pleadings based on the State's blanket sovereign immunity defense and/or the limitations period in § 516.145. Thus, we reverse the court's judgment on the pleadings and remand the case for further proceedings consistent with this opinion. We affirm the trial court's denial of Berhow's amended motion for sanctions.

_____
Karen King Mitchell, Judge

Thomas N. Chapman, Presiding Judge, and W. Douglas Thomson, Judge, concur.